1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   AT&T MOBILITY LLC,                    Civ. No.  2:13-cv-00007-KJM-DAD

12                  Plaintiff,

13          v.                             ORDER

14   GENERAL CHARLES E. "CHUCK"
     YEAGER (RET.), et al.,
15
                    Defendants.
16

17   PARSONS BEHLE & LATIMER, PLC,

18                  Plaintiff in Intervention,

19          v.

20   GENERAL CHARLES E. "CHUCK"
     YEAGER (RET.),
21
                    Defendant.
22

23          The motion for summary judgment by plaintiff in intervention Parsons Behle &

24   Latimer, PLC ("PBL") is currently pending before the court.  The court submitted the motion

25   without argument and now DENIES it.

26   I.     BACKGROUND

27          On November 21, 2007, Robert Eliason with the law firm of Wild, Carter &

28   Tipton filed a complaint against AT&T on General Yeager's behalf in a separate case, raising

                                          1

1  claims of violation of the common law right of privacy and California Civil Code section 3344,

2  among other claims. *Yeager v. AT&T*, Civ. No. S-07-2517 KJM GGH ("Yeager docket"), ECF

3  No. 1.

4         On September 9, 2008, the court granted Eliason's motion to withdraw as counsel

5  and substituted plaintiff in propria persona. ECF No. 31. On March 16, 2009, Steven McDonald

6  of De La Pena & McDonald LLP substituted in as counsel for Yeager. Yeager docket, ECF

7  No. 33.

8         On March 8, 2010, the court granted plaintiff's substitution of attorney, relieving

9  attorney McDonald and substituting Charles Harder of Wolf, Rifkin, Shapiro, Schuman &

10  Rabkin, LLP as counsel. Yeager docket, ECF No. 73. On October 19, 2010, the court granted

11  Harder's motion to withdraw as counsel and substituted plaintiff in propria persona. Yeager

12  docket, ECF No. 84.

13         On June 25, 2010, Connie Bowlin, Ed Bowlin and Aviation Autographs (the

14  Bowlins), judgment creditors, filed a lien against Yeager for satisfaction of a money judgment

15  granted in a separate action, *Yeager, et al. v. Bowlin, et al.*, Civ. No. 2:08–105 WBS JFM.

16  Yeager docket, ECF No. 77.

17         On November 16, 2010, attorney Joanna Mendoza substituted in as counsel for

18  plaintiff. Yeager docket, ECF No. 88. The court granted Mendoza's motion to withdraw on

19  April 11, 2011, again substituting Yeager in propria persona. Yeager docket, ECF Nos. 95, 96.

20         On October 12, 2011, attorney John Zarian of Zarian Midgley & Johnson PLLC

21  substituted in as counsel for Yeager. Yeager docket, ECF No. 106.  In November 2011, as noted

22  on the docket in this case, Zarian Midgley merged with PBL. *See AT&T Mobility v. Yeager,*

23  *et al*., Civ. No. S-13-0007 KJM DAD (AT&T docket), ECF No. 72-3 ¶ 4.

24         On June 8, 2012, Yeager prevailed in a jury trial against AT&T on his claim that

25  AT&T violated his right to publicity under California Civil Code section 3344 by using

26  Yeager's name to promote its cell phone service. Yeager docket, ECF No. 222. The jury

27  awarded Yeager $135,000. Yeager docket, ECF No. 227 at 2.

28  /////

1    On June 13, 2012, attorney Mendoza filed a notice of a lien claim.  Yeager docket,

2    ECF No. 231.  She withdrew the lien claim on March 21, 2013.  Yeager docket, ECF No. 296.

3    Yeager filed a  motion for attorneys' fees on July 9, 2012. Yeager docket,  ECF

4    No. 243.  In support of the motion for attorneys' fees, Yeager submitted billing records from

5    Zarian Midgley & Johnson and its successor firm PBL as well as billing records from his many

6    former counsel.  *See generally* Yeager docket, ECF No. 243.

7    De La Pena & McDonald filed a notice of a lien claim on August 22, 2012, but

8    withdrew it on April 23, 2013.  Yeager docket, ECF Nos. 259, 300.

9    On December 18, 2012, the court granted Yeager's motion for $160,757 fees for

10   PBL's work on the case, but denied his request for $132,150.72 in fees owed to his previous

11   counsel, holding that the invoices of the previous counsel were not properly authenticated.

12   Yeager docket, ECF No. 270 at 5.  The court also granted in part plaintiff's request for costs

13   under California Civil Code section 3344, granting $5,728.42 of the $15,437.72 requested, and

14   granted in part plaintiff's request for costs under Federal Rule of Civil Procedure 54(d) (granting

15   $7,100.30 of the $36,681.63 requested).  *Id.*  The court directed AT&T to remit a total of

16   $173,585.72 within fourteen days of the date of the order.  *Id*.

17   On December 28, 2012, the Bowlins filed a motion to intervene as judgment lien

18   creditors, seeking an order for disbursement of funds.   Yeager docket, ECF No. 271.

19   On January 2, 2013, plaintiff filed a motion for leave to file a supplemental motion

20   for attorneys' fees.  Yeager docket, ECF No. 277.  In that motion, Yeager sought an award of

21   $26,039 in attorneys' fees and additional costs incurred between July 1, 2012 and September 30,

22   2012.  Yeager docket, ECF Nos. 277, 278.

23   Also on January 2, 2013, AT&T initiated this separate action as a complaint for

24   interpleader, naming Yeager, the Bowlins, Mendoza, DeLaPena & McDonald and the Lesser Law

25   Group as defendants, and depositing  $308,668.85 with the court.  AT&T docket, ECF No. 1.

26   The amount represents the $135,000 judgment and $173,585.72 fees award in the underlying

27   AT&T action, plus accrued interest.  *Id.* at 1.  In its complaint for interpleader, AT&T explains

28   the named defendants each claim entitlement to all or a portion of the amounts payable by AT&T

3

1    in satisfaction of the judgment in the underlying AT&T action.  AT&T filed the separate

2    interpleader action seeking relief that includes discharge from any further liability and a

3    determination as to which of the defendants is entitled to the amount of the deposited funds.  *Id.*

4    at 5.

5            On January 16, 2013, Yeager filed a motion asking the court to reconsider its

6    decision not to award plaintiff the fees incurred by previous counsel.  Yeager docket, ECF

7    No. 279.

8            On February 15, 2013, Attorney Zarian filed a motion to withdraw as counsel

9    alleging among other things that Yeager had failed to pay the firm's invoices.  Yeager docket,

10   ECF No. 289.  The court directed Zarian to show cause why the request should not be denied in

11   light of then-pending motions for reconsideration and for additional fees.  Yeager docket,  ECF

12   No. 295.  On April 23, 2013, Yeager opposed Zarian's motion to withdraw.  Yeager docket, ECF

13   No. 301.

14           On April 16, 2013, the court granted the parties' stipulation for dismissal of AT&T

15   from the instant interpleader action subject to its depositing any supplemental attorneys' fees

16   awarded with the court.  AT&T docket, ECF No. 50.

17           On August 20, 2013, the court granted PBL's request for an additional award of

18   $7,763.63 in fees and denied the motion for reconsideration.  Yeager docket, ECF No. 305.

19           On October 1, 2013, AT&T deposited an additional $7,763.63 with the court and

20   on October 7, 2013, the court dismissed AT&T from the action.  AT&T docket, ECF No. 64.

21           On October 2, 2013, the court granted PBL's motion to withdraw as counsel in the

22   underlying case and discharged the order to show cause.  Yeager docket, ECF No. 306.

23           Zarian then filed a motion to intervene on behalf of PBL on December 5, 2013.

24   AT&T docket, ECF No. 72.  On April 11, 2014, the court granted the motion to intervene.

25   AT&T docket, ECF No. 91.  Following the court's order, PBL filed an intervenor complaint on

26   May 5, 2014.  AT&T docket, ECF No. 93.  Yeager answered on June 10, 2014.  AT&T docket,

27   ECF No. 95.

28   /////

4

1    PBL filed the instant motion for summary judgment on July 11, 2014.  AT&T

2    docket, ECF No. 103.  Yeager opposed on July 24, 2014, AT&T docket, ECF No. 108, and PBL

3    replied on July 31, 2014, AT&T docket, ECF No. 109.

4    II.    ALLEGATIONS OF PBL'S COMPLAINT-IN-INTERVENTION

5    PBL alleges as follows in its complaint-in-intervention.  On October 5, 2011,

6    Yeager and Zarian entered into a retention letter agreement, which provided Zarian would

7    represent Yeager in the AT&T action.  Compl.-In-Intervention ¶ 8 ("Compl."), ECF No. 93.[1]  On

8    November 1, 2011, Zarian's firm merged with PBL.  *Id.* ¶ 10.  Between November 2011 and

9    April 2013 Zarian and PBL sent Yeager regular billing statements for professional services,

10   which totaled $106,408.53.  *Id.* ¶ 12.  PBL received payments from Yeager on March 16, May 22

11   and September 19, 2012.  *Id.* ¶ 14.

12   Yeager was awarded $135,000 in damages by a jury in the underlying AT&T

13   action.  *Id.*  PBL continued to represent Yeager in post-trial proceedings.  *Id.* ¶ 15.  The court

14   awarded Yeager $173,585.72 in fees and costs and supplemented the award by $7,763.63.  *Id.*  In

15   February 2013 PBL withdrew as counsel for Yeager in the AT&T action.  *Id.* ¶ 18.

16   On January 2, 2013, AT&T deposited $308,668.95 with the Clerk of the Court,

17   which represents the $135,000 damages award, the $173,585.72 fees and costs award and accrued

18   interest.  *Id.* ¶ 19.  On October 1, 2013, AT&T deposited with the Clerk of the Court the

19   supplemental award amount of $7,763.63.  *Id.*  "The sums deposited with the Clerk of the Court

20   include sums awarded for fees and costs corresponding to the $106,408.53 in professional fees

21   and costs advanced by Parsons Behle as part of its representation of Gen. Yeager, which fees and

22   costs remain unpaid."  *Id.* ¶ 20.  "Under California law, statutorily awarded fees and costs may be

23   properly payable directly to the attorney of record where the legal services rendered resulted in

24   the award and where such a direct payment is consistent with legislative intent and/or public

25   policy."  *Id.* ¶ 21.

26   /////

27   _____

28   [1] Unless otherwise indicated, all further references to the docket are to the AT&T docket,
     the docket in this case.

5

1    PBL alleges four claims for relief for breach of contract, *id.* ¶¶ 23–27, account

2  stated, *id.* ¶¶ 28–31, services rendered, *id.* ¶¶ 32–35, and quantum meruit, *id.* ¶¶ 36–40.  PBL

3  seeks, among other things, payment for services rendered in the amount of at least $106,408.53.

4  *Id.* at 7.

5    III.    STANDARD FOR A SUMMARY JUDGMENT MOTION

6    A court will grant summary judgment "if . . . there is no genuine dispute as to any

7  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

8  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

9  resolved only by a finder of fact because they may reasonably be resolved in favor of either

10  party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[2]

11    The moving party bears the initial burden of showing the district court "that there

12  is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*,

13  477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish

14  that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio*

15  *Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular

16  parts of materials in the record . . . ; or show [] that the materials cited do not establish the

17  absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

18  evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586

19  ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as

20  to the material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material*

21  fact . . . .  Only disputes over facts that might affect the outcome of the suit under the governing

22  law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48.

23    In deciding a motion for summary judgment, the court draws all inferences and

24  views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

25  587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).   "Where the record taken as a

26  _____

27    [2] Rule 56 was amended, effective December 1, 2010.  However,  it is appropriate to rely
on cases decided before the amendment took effect, as "[t]he standard for granting summary
judgment remains unchanged."  Fed. R. Civ. P. 56 Advisory Committee's Note (2010
28  Amendments).

1   whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

2   issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv.*

3   *Co.*, 391 U.S. 253, 289 (1968)).

4          A court may consider evidence as long as it is "admissible at trial." *Fraser v.*

5   *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the

6   evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001)

7   (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the

8   burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir.

9   2002). If the opposing party objects to the proposed evidence, the party seeking admission must

10  direct the district court to "authenticating documents, deposition testimony bearing on attribution,

11  hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in

12  question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86

13  (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and

14  documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240,

15  1243 (9th Cir. 1979).

16  IV.     UNDISPUTED FACTS

17          When the parties agree a fact is undisputed, the court refers to their agreement

18  rather than to the portions of the record supporting the agreement. When the facts are disputed,

19  the court notes the disagreement and cites to the supporting record. The court does not cite to any

20  facts that are irrelevant to resolution of the pending motion.

21          In the underlying action here, the court awarded attorneys' fees totaling

22  $168,520.63. Yeager's Resp. to PBL's Statement of Undisputed Facts ¶ 1, ECF No. 108-1. This

23  award "relates to professional legal fees claimed by" Yeager in that action and "reflects

24  professional services actually rendered by [PBL] only in connection with that action." *Id.* ¶¶ 2–3

25  (emphasis omitted).

26          The parties dispute whether Yeager has paid only $86,692.98 of the attorneys' fee

27  award to PBL. *Id.* ¶¶ 4–5. Yeager disputes PBL's calculation of Yeager's payments, arguing

28  Yeager's spouse, who "handle[s] [Yeager's] financial and legal matters," Yeager Decl. ¶ 1, ECF

7

1   No. 108-2, paid PBL "more than $100,000 in attorney's fees . . . ."  Yeager's Opp'n to Mot.

2   Summ. J. ("Opp'n") at 2, ECF No. 108; Yeager Decl. ¶ 2.  Yeager does not dispute the

3   calculation of attorneys' fees in the amount of $168,520.63 as awarded by the court in the

4   underlying action.  He does dispute PBL's calculation of the payments he has made to PBL in

5   satisfaction of the fees billed.

6   V.      PBL'S MOTION FOR SUMMARY JUDGMENT

7           PBL seeks summary judgment for fees in the amount of $81,827.65, which it

8   argues represents Yeager's unpaid portion of the $168,520.63 awarded by the court.[3]  Mem. P.

9   A. in Supp. Mot. Summ. J. ("Mem.") at 2–3, ECF No. 103-1.  PBL focuses a significant portion

10  of its memorandum on the argument that it is entitled to the unpaid portion as a statutory award

11  under California Civil Code section 3344's fee shifting provision.  *See id.* at 6–15; *see also id.* at

12  7 (citing *Flannery v. Prentice*, 26 Cal. 4th 572, 577 (2001), for proposition that, "to the extent

13  attorneys have provided unpaid legal services to the prevailing litigant, the statutory attorney fee

14  award belongs and should be paid directly to those attorneys, unless such unpaid fees have been

15  waived or otherwise validly disposed of by contractual agreement").  However, as noted, Yeager

16  does not dispute the accuracy of the total of $168,520.63 awarded.  Yeager's Resp. to PBL's

17  Statement of Undisputed Facts ¶¶ 1–3, but rather disputes whether $81,827.65 is an accurate

18  calculation of the unpaid amount Yeager owes PBL.  *Id.* ¶¶ 4-6; Opp'n at 2.  *Flannery* does not

19  help PBL in this regard as it only addressed "the narrow question . . . whether a party may receive

20  or keep the proceeds of a fee award when she has neither agreed to pay her attorneys nor obtained

21  from them a waiver of payment."[4]  *Flannery*, 26 Cal. 4th at 580–81.

22          [3] PBL requests the court take judicial notice of nine documents filed in the Yeager action.
    ECF No. 104.  The documents submitted by PBL are of the type for which judicial notice is
23  proper.  Fed. R. Evid. 201.  Specifically, the documents consist of matters filed as part of a court
    proceeding.  Matters of public record are generally subject to judicial notice.  *Akhtar v. Mesa*,
24  698 F.3d 1202, 1212 (9th Cir. 2012).  Accordingly, PBL's request for judicial notice is granted.

25          [4] Similarly, much of Yeager's "disputed material facts" focus on, *inter alia*, whether
    "Zarian erred by not getting appropriate declarations and/or not filing the ones they did not obtain
26  from other attorneys, in a timely fashion" when it submitted its motion for attorneys' fees, or
    whether Zarian "mishandled other issues affecting the award and judgment."  Yeager's Resp. to
27  PBL's Statement of Undisputed Facts ¶¶ 8–16.  Notwithstanding the fact none of these arguments
    were actually made in Yeager's memorandum in opposition to the motion for summary judgment,
28  the question before this court is not whether the award of $168,520.63 in the underlying action is

1    PBL's only remaining argument is the "statutory attorney's fee award pursuant to

2    section 3344 in the amount of $168,520.63" has not been paid in full by Yeager, and he

3    "continues to owe [PBL] $81,837.65." Mem. at 16.  The only basis for its claim for the unpaid

4    fees is the declaration of John Zarian, which includes an itemized spreadsheet listing the

5    payments received from Yeager totaling $86,692.98 and the remaining balance of $81,827.65.

6    Zarian Decl. Ex. B, ECF No. 105-1 ("billing summary"); *see also* Zarian Decl. ¶ 12, ECF No. 105

7    ("Exhibit B is a true and correct copy of a summary showing the fees claimed, fees awarded,

8    payments applied, and the outstanding balance.").

9    As a preliminary matter, the court must determine whether the billing summary is

10   admissible evidence.  *See* Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d

11   1179, 1181 (9th Cir. 1988).  In order for evidence to be admissible, a party must satisfy the

12   requirement of authenticating or identifying an item of evidence by producing "evidence

13   sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid.

14   901(a); *see also Beyene*, 854 F.2d at 1182; *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir.

15   2004 (invoices are not self-authenticating under Rule 902(9)).  The Ninth Circuit has "repeatedly

16   held that unauthenticated documents cannot be considered in a motion for summary judgment."

17   *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (collecting cases).  "In a

18   summary judgment motion, documents authenticated through personal knowledge must be

19   'attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure] 56(e)

20   and the affiant must be a person through whom the exhibits could be admitted into evidence.'"

21   *Id.* at 773–74 (quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)).

22   Rule 56 requires that affidavits be made on personal knowledge and that the affiant be competent

23   to testify to the matters stated therein.  Fed. R. Civ. P. 56(e).

24   /////

25   /////

26   /////

27   proper.  The dispute here is whether or not the attorneys' fees awarded to Yeager as a result of
     that ruling were paid by Yeager to PBL such that PBL is entitled to all or a portion of the amount
28   deposited by AT&T with the court.

1    With regard to the billing summary itemizing Yeager's payments, John Zarian's

2 declaration states:

3    10.    In addition to a retainer payment remitted by Gen. Yeager in
the early stages of the representation, Parsons Behle's records
4    reflect that Gen. Yeager made four other payments.   The total
amount of retainer funds and payments applied to the fees claimed
5    in the *Yeager v. AT&T* matter is $86,692.98.

6    11.    Each invoice sent to Gen. Yeager included an accounting,
documenting payments applied to the *Yeager v. AT&T* matter.
7    Accordingly, Gen. Yeager was fully advised of the manner and
timing of the payments applied.  Gen. Yeager has never disputed

8

9    these payment applications, which are properly accounted for as
part of the funds at issue in this lawsuit.

10    12.    Of the $168,520.63 in fees awarded by Court [sic] for
professional services rendered by Zarian Midgley and Parsons
11    Behle, $81,827.65 remains outstanding and unpaid.   Attached
hereto as Exhibit B is a true and correct copy of a summary
12    showing the fees claimed, fees awarded, payments applied, and the
outstanding balance.  At no point has Parsons Behle ever entered
13    into a contractual agreement, or other understanding, with Gen.
Yeager for purposes of waiving or otherwise disposing of any of
14    amounts [sic] owed by him in the *Yeager v. AT&T* matter, inclusive
of the outstanding balance set forth in Exhibit B.

15

16 Zarian Decl. ¶¶ 10–12 (emphasis omitted).  The billing summary submitted by PBL shows the

17 following:

18

| Invoice Date | Firm | Fees Claimed | Fees Awarded | Payments Applied | Balance |
|---|---|---|---|---|---|
| 8/31/2011 | Zarian Midgley | $2,368.00 | $2,368.00 | $2,368.00 | |
| 9/30/2011 | Zarian Midgley | $471.00 | $471.00 | $471.00 | |
| 11/20/2011 | Zarian Midgley | $11,388.50 | $11,388.50 | $11,388.50 | |
| 2/9/2012 | Parsons Behle | $1,440.00 | $1,440.00 | $1,440.00 | |
| 2/18/2012 | Parsons Behle | $256.00 | $256.00 | $256.00 | |
| 3/31/2012 | Parsons Behle | $11,404.00 | $11,404.00 | $11,404.00 | |
| 5/23/2012 | Parsons Behle | $10,192.00 | $10,192.00 | $10,192.00 | |
| 6/30/2012 | Parsons Behle | $10,161.00 | $10,161.00 | $10,161.00 | |
| 7/5/2012 | Parsons Behle | $113,076.50 | $113,076.50 | $39,012.48 | |
| 10/3/2012 | Parsons Behle | $18,763.50 | $7,763.63 | $0 | |
| 10/31/2012 | Parsons Behle | $7,275.50 | | $0 | |
| | | $186,796.00 | $168,520.63 | $86,692.98 | **$81,827.65** |

26 Zarian Decl. Ex. B.  Zarian's declaration also states that, in addition to a retainer payment made

27 by Yeager, he "made four other payments."  *Id.*¶ 10.  However, neither Zarian's declaration nor

28

1    the billing summary specifies the exact amount of each of the four payments made by Yeager.

2    The billing summary itemizes the fees claimed by PBL, the fees awarded by the court and the

3    payments applied, which are the exact amounts as the fees claimed and awarded for the first eight

4    invoices.  The payments applied column does not reflect a retainer payment and four separate

5    payments.  Thus, to the extent Zarian declares Yeager made only one retainer payment and four

6    subsequent payments, the billing summary does not support his assertion.

7           Moreover, Zarian describes no personal knowledge of the summary of payments

8    made by Yeager, nor "any other manner in which [he] is otherwise competent to testify about

9    [the] contents" of the summary.  *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1048–49

10   (D. Or. 2010) (excluding from evidence an exhibit introduced through an affidavit as improperly

11   authenticated).  Zarian does not explain the origin and contents and the billing summary is

12   "facially devoid of any identifying information supporting any conclusion" about its source.  *Id.*

13   at 1049.

14          Other than introducing the billing summary as a "true and correct copy," Zarian

15   Decl. ¶ 12, Zarian does not declare he has personal knowledge of the facts set forth in the

16   summary sufficient to attest to the identity and accuracy of the contents.  *Cf.*, *e.g.*, *Kruse v.*

17   *Hawai'i*, 857 F. Supp. 741, 745 n.5 (D. Haw. 1994) (finding a case log properly authenticated

18   under Fed. R. Evid. 901 through declaration stating, among other things, declarant was "familiar

19   with the documents" based on her capacity as a supervisor and "she was the custodian of the file[]

20   until it was transferred").  A statement in an attorney's declaration that an exhibit is a "true and

21   correct copy," without more, does not lay an adequate foundation to properly authenticate the

22   billing summary.  *Beyene*, 854 F.2d at 1182.

23          Consonant with the court's obligation to consider only authenticated documents in

24   resolving motions for summary judgment, the court will not rely on the unauthenticated billing

25   summary.  *Orr*, 285 F.3d at 773.

26          In its reply, PBL argues in part that "the fee awards granted by this Court at

27   Yeager's request establish the threshold amounts owed and unpaid," referencing its request for

28   judicial notice of the court's orders in the underlying AT&T action.  Reply in Supp. of Mot.

1  Summ. J. at 4, ECF No. 109.  To the extent PBL argues the numerous filings in the underlying

2  AT&T action establish the unpaid amount owed by Yeager, this argument is unavailing.  PBL

3  fails to point to where exactly in the record evidence of Yeager's payments or outstanding

4  balance exists.  The court will not undertake an examination of the more than four hundred pages

5  PBL offers in an effort to locate evidence where it is not identified in PBL's papers with adequate

6  references.  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (a party must

7  bring its evidence to the court's attention because a district court is not required to comb the

8  record).

9          The only relevant evidence relied on by PBL in support of its motion for summary

10  judgment is the billing summary.  PBL's Statement of Undisputed Facts ¶¶ 4–6, ECF No. 103-3.

11  As the moving party, PBL has not satisfied its initial burden of showing the court "there is an

12  absence of evidence to support the nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325.

13          Accordingly, PBL's motion for summary judgment is DENIED.

14  DATED: August 19, 2014.

15

16

17  _____
    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

                                    12