UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AT&T MOBILITY LLC,<br><br>                       Plaintiff,<br><br>            v.<br><br>GENERAL CHARLES E. "CHUCK" YEAGER (RET.); ED BOWLIN; CONNIE BOWLIN; AVIATION AUTOGRAPHS; BOWLIN & ASSOCIATES, INC.; LAW OFFICES OF JOANNA R. MENDOZA, P.C.; DE LA PENA & HOLIDAY, LLP; LESSER LAW GROUP,<br><br>                       Defendants. | No. 2:13-cv-0007-KJM-DAD<br><br>ORDER |

General Charles "Chuck" Yeager hired John Zarian and Parsons Behle & Latimer, PLC, to represent him at trial. After the trial, Parsons Behle withdrew, intervened, and claimed Yeager had not paid his bills. A new trial very nearly began on the fee dispute, but four days before the trial date Yeager and Parsons Behle notified the court they had settled. Notice of Settlement, ECF No. 126. The trial was vacated. Minute Order, ECF No. 127. Yeager now refuses to sign the settlement agreement, declaring he did not agree to its terms. Yeager Decl. 2, ECF No. 130. The matter is before the court on Parsons Behle's motion to enforce the settlement agreement it claims the parties reached. Mot. to Enforce Settlement Agreement (Mot.), ECF No.

1

128; Mem. P. & A. in Supp. of Mot. (Mem.), ECF No. 128-1. The court held a non-evidentiary hearing on November 7, 2014. Parker White Appeared for Yeager,[1] and John Zarian appeared for Parsons Behle. Because an evidentiary hearing is necessary, the court defers ruling on this motion.

I.   BACKGROUND

The court denied Parsons Behle's motion for summary judgment on August 19, 2014. Order 12, ECF No. 116. Parsons Behle began preparing for trial. Zarian Decl. ¶¶ 4-5, ECF No. 128-2. Trial was set for September 8, 2014. Minutes, ECF No. 117. On September 4, Parsons Behle and Yeager's counsel began negotiating a settlement agreement. Zarian Decl. ¶ 6. Counsel exchanged draft settlement agreements that day and the next. Zarian Decl. ¶¶ 6-9. Yeager's counsel sent Parsons Behle a final agreement, signed by Mr. White, Yeager's counsel. *Id.* ¶ 9, Ex. C. Mr. White confirmed the agreement "reflect[ed] the agreement of the parties, as in those expected to sign": General Yeager and his wife Victoria Yeager. *Id.* Ex. D, at 1 (emphasis in original). Parsons Behle then agreed to a joint notice of settlement, which "estimated that Defendant-in-Intervention will fully perform its duties on or around October 3rd, 2014." Notice 2, ECF No. 126. The court vacated the trial because "[p]ursuant to the representations of the parties," the case had settled. Minute Order, ECF No. 127. Parsons Behle was unable to obtain Yeager's signature over the next few weeks, until Mr. White informed Parsons Behle he had "run into serious problems with [his] clients" and did not have a signed settlement agreement. Zarian Decl. ¶ 14.

Parsons Behle filed this motion soon thereafter, arguing (1) this court has jurisdiction to enforce the settlement agreement, (2) the agreement should be enforced, (3) Parsons Behle is entitled to $65,000 from the interpleaded funds, and (4) the court should impose sanctions. Yeager opposed, stating only, "Defendant-In-Intervention submits this Opposition to Motion to Enforce Settlement," Def.'s Opp'n 1, ECF No. 130, and attaching his declaration, *id.* at 3-4. Yeager declared he "did not agree to the terms of the written settlement

---

[1] Mr. White filed a motion to withdraw on October 20, 2014, noticing a hearing for November 21, 2014. Mot. to Withdraw, ECF No. 129.

agreement," and "did not agree to give up my rights to sue John Zarian and/or Parsons Behle & Latimer et al for legal malpractice." *Id.* at 4. Parsons Behle replied, contending (1) Yeager was judicially estopped from claiming he did not agree to the terms of the settlement agreement, (2) Yeager was bound by his counsel's words, and (3) Yeager waived any claim for legal malpractice by not filing a compulsory counterclaim.

II.   DISCUSSION

No dispositional documents have been filed in this case. The dispute between Parsons Behle and Yeager remains pending before the court. In general, a federal district court has inherent authority to summarily enforce an agreement settling an action pending before it. *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978). Nothing here suggests this general rule does not apply.

Because Parsons Behle filed this motion to enforce the agreement, it bears the burden to prove the agreement exists. *Andreyev v. First Nat'l Bank of Omaha*, 313 B.R. 302, 305 (B.A.P. 9th Cir. 2004). State contract law governs disputes about the existence and enforceability of an agreement to settle a case. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990). Because the parties here did not recite the terms of the agreement at issue in open court, *Doi v. Halekulani Corp.*, 276 F.3d 1131 (2002), is distinguishable. *See In re Clawson*, 434 B.R. 556, 570 (N.D. Cal. 2010) (distinguishing *Doi* because in that case, "the parties placed the material terms of the settlement agreement on the record and made representations that were binding"). And finally, although Parsons Behle contends California Code of Civil Procedure 664.6 governs the dispute, the California Supreme Court requires an agreement be signed by the parties, not their attorneys, for that rule to apply. *Levy v. Superior Court*, 10 Cal. 4th 578, 586 (1995). Yeager, the party against whom Parsons Behle seeks enforcement, has not signed the agreement here; only Mr. White, his counsel, has signed.

This discussion leaves two questions unresolved: first, whether the settlement agreement exists as an oral agreement, and second, whether Yeager's counsel had authority to bind him at all.

/////

3

A.     Existence of an Oral Agreement

In California, an oral agreement may give rise to a binding contract. *Kreling v. Walsh*, 77 Cal. App. 2d 821, 834-35 (1947); *Khajavi v. Feather River Anesthesia Medical Group*, 84 Cal. App. 4th 32, 61-62 (2000). If two parties reach an oral agreement, that agreement may in some cases be enforced even if the parties expected a written agreement would follow. *Khajavi*, 84 Cal. App. 4th at 61-62. A negotiated oral agreement becomes binding, even when the parties expected to sign a written agreement, only if the oral agreement's terms are "definitely understood." *Id.* at 61 (quoting *Louis Lesser Enterprises, Ltd. v. Roeder*, 209 Cal. App. 2d 401, 404-05 (1962)); *see also Banner Entertainment, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 358 (1998) ("[I]f the respective parties orally agreed upon all of the terms and conditions of a proposed written agreement with the mutual intention that the oral agreement should thereupon become binding, the mere fact that a formal written agreement to the same effect has not yet been signed does not alter the binding validity of the oral agreement."). On the other hand, no binding oral agreement exists if "the parties understood that the proposed agreement [was] not complete until reduced to formal writing and signed . . . ." *Khajavi*, 84 Cal. App. 4th at 61-62.

In *Sangerman v. Theriault Enterprises Inc.*, the Northern District court enforced an oral contract to settle under California law. No. C-05-04183, 2007 WL 707502, at *1-2 (N.D. Cal. Mar. 6, 2007). The parties' counsel had negotiated and exchanged draft settlement agreements. *Id.* All the drafts consistently indicated the defendants would pay $65,000 to settle the case. *Id.* The drafts differed as to what time payment would be made. *Id.* The plaintiffs signed the agreement, but the defendants did not, although counsel for the defendants said his clients would execute a draft agreement. *Id.* at *2. When the defendants were unable to obtain a loan to pay for the settlement, they declined to sign the agreement. *Id.* The defendants filed a notice of non-opposition to the plaintiff's motion to enforce the version of the agreement the plaintiffs had signed. *Id.* The court required the defendants pay $65,000 to settle the action and enforced the timing contemplated in the agreement the plaintiffs signed. *Id.* at *3.

/////

The facts here are similar to those in *Sangerman*. Parsons Behle has provided evidence of a consistent agreement between itself and Yeager's counsel to settle the case. On several occasions, Mr. White confirmed his client had agreed to settle the case for $65,000 through disbursement of funds deposited with the court in the interpleader action. Mem. at 2:7-3:2, 5:3-9. Parsons Behle sought and received express confirmation from Mr. White that "the parties, as in those expected to sign" agreed to the terms of the settlement. Zarian Decl. Ex. D, at 2, ECF No. 128-6 (emphasis in original). The court and Parsons Behle relied on Yeager's representations, through his counsel, that the case had settled when it vacated the trial. Notice of Settlement, ECF No. 126; Minute Order, ECF No. 127. The agreement is consistent in material terms, the parties expressed clear intent as to its finality, and Mr. White, counsel for the party against whom enforcement is sought, signed it. Zarian Decl. Ex. J, ECF No. 128-12. Yeager contests none of these facts in his austere opposition. If indeed Mr. White had authority, Yeager is bound.

        B.        Authority to Bind

Yeager declares, "I did not agree to the terms of the written settlement agreement," and "I did not give up my rights to sue John Zarian and/or Parsons Behle & Latimer et al for legal malpractice," and refuses to sign "the proposed written settlement agreement." Yeager Decl. 2, ECF No. 130. The court first addresses Yeager's contention he did not "give up" his right to assert a legal malpractice claim, then whether his counsel had authority to enter the agreement in his behalf.

        1.        Legal Malpractice Claims

Federal Rule of Civil Procedure 13(a) requires a party to state a counterclaim in a responsive pleading if the claim "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." This rule is meant to prevent multiple lawsuits and promptly resolve related disputes. *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1201 (9th Cir. 2010). A party who does not bring a compulsory counterclaim may not reassert that claim in a future proceeding. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469

n.1 (1974). In this circuit, a counterclaim arises out of the same transaction or occurrence if "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Amer.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (citation and internal quotation marks omitted).

Here Parsons Behle seeks fees it incurred during its representation of Yeager in the AT&T trial. A legal malpractice claim by Yeager against Parsons Behle would require the court examine the relationship between Parsons Behle and Yeager, including the parties' contracts, their communications, and the events surrounding the AT&T trial. A fee claim would require the same. The two claims are effectively opposite of one another: Parsons Behle alleges it performed the services for which the parties contracted and now demands payment; a suit for legal malpractice would allege Parsons Behle was deficient in its performance and would seek recovery of, among other damages, any fees paid. *See Law Offices of Jerris Leonard, P.C. v. Mideast Sys., Ltd.*, 111 F.R.D. 359, 361 (D.D.C. 1986) ("[I]t is hard to imagine a clearer compulsory counterclaim to a complaint for failure to pay legal fees than a legal malpractice claim stemming from the handling of the litigation for which fees are sought."). When the parties were negotiating settlement, Yeager had not filed a counterclaim for any legal malpractice he thought Parsons Behle committed when it represented him in the AT&T trial. Because that counterclaim was compulsory, he had no right to bring it then and could not have reserved that right during settlement negotiations.

2.     Authority to Enter the Settlement Agreement

Yeager claims he did not agree to settle. His claim is tantamount to an assertion his attorney lacked authority to enter the settlement agreement on his behalf. As a preliminary matter, Parsons Behle contends the doctrine of judicial estoppel precludes Yeager from asserting this position. Reply at 2-3. The doctrine of judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). The doctrine must be applied, if at all, after deciding whether Yeager's counsel had authority to bind

1   him: if Yeager had not given Mr. White authority to settle when the parties reported their

2   settlement agreement, Yeager could not later abandon that position because he had not taken it in

3   the first place.

4   Federal circuit courts have taken opposite positions on what law applies to

5   determine whether a lawyer who appears in federal court was authorized to bind a client to a

6   settlement agreement. *See Schaffer v. Litton Loan Servicing, LP*, No. 05-07673, 2010 WL

7   9951762, at *9 (C.D. Cal. Oct. 18, 2010) (quoting *In re Clawson*, 434 B.R. 556, 570–71 (N.D.

8   Cal. 2010)). The Ninth Circuit has not taken a position. *Id.* Some circuits hold that federal

9   common law applies to this relationship. *See Clawson*, 434 B.R. at 570-71 (collecting cases).

10  These circuits favor a presumption of the attorney's authority to bind a client to a settlement

11  agreement. *Id.* at 571. A party may rebut this presumption with evidence the attorney acted

12  outside the scope of authority. *Id.* (citing *In re Artha Management, Inc.*, 91 F.3d 326

13  (2d Cir.1996)). Other circuits apply state law to the relationship. *See id.* (collecting cases). They

14  observe a uniform federal rule has not solidified; modern decisions disfavor the creation of

15  federal common law; and uniformity between federal and state courts within the same state

16  appears more important than among federal courts in different states. *Anand v. California Dept.*

17  *of Developmental Services*, 626 F. Supp. 2d 1061, 1065 (E.D. Cal. 2009) (citing *Makins v.*

18  *District of Columbia*, 277 F.3d 544, 547-48 (D.C. Cir. 2002)).

19  This court adopts the position that state law governs this determination. Under

20  California law, the rules governing the attorney-client relationship are based on the general rules

21  of agency. *Fidelity & Cas. Co. of N.Y. v. Abraham*, 70 Cal. App. 2d 776, 783 (1945). An attorney

22  does not have implied authority to settle by virtue of his representative role in pending litigation.

23  *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 404 (1985). The client's "specific authorization" is

24  required. *Bice v. Stevens*, 160 Cal. App. 2d 222, 231–32 (Cal. Ct. App. 1958). A client may,

25  however, bind himself to the unauthorized acts of his attorney by ratifying them. *Blanton*,

26  38 Cal. 3d at 408 (citing *Fidelity*, 70 Cal. App. 2d at 783). After all, a principal may not both

27  receive the advantages of an agreement and escape its burdens by later repudiation: "it would be

28

7

unfair to allow him both to have his cake and eat it too." *Alvarado Cmty. Hosp. v. Superior Court*, 173 Cal. App. 3d 476, 481 (1985).

Here, although not in so many words, Parsons Behle argues Yeager ratified the settlement agreement: "Yeager surely knew that his case was set for trial and obviously knew that the trial did not go forward . . . perhaps he changed his mind *after* having received the benefits of scuttling he trial . . . ." Reply at 4 (emphasis in original). Although suggestive of ratification, Yeager's complacency is not on the same plane of affirmative acts found in previous California cases to signify a client's ratification. *See, e.g.*, *Navrides v. Zurich Ins. Co.*, 5 Cal. 3d 698, 703-04 (1971) (binding the client after she sued an insurer for the amount payable to her in a settlement agreement negotiated fraudulently on her behalf by her former attorney); *Alvarado Cmty. Hosp*, 173 Cal. App. 3d at 483 (holding the client would "ordinarily" be bound by seeking out her portion of a payment in a settlement agreement negotiated fraudulently on her behalf by her former attorney); *City of Fresno v. Baboian*, 52 Cal. App. 3d 753, 759-60 (1975) (binding clients after they did not object to giving up a possessory right in a settlement agreement, did not bring an action for possession, and stipulated the question of possession was not before the court).

If a client alleges an attorney acted without authorization, the question becomes one of fact to be resolved by taking evidence. *Anand*, 626 F. Supp. 2d at 1067 (citing *Blanton*, 38 Cal. 3d at 403-04; *Whittier Union High Sch. Dist. v. Superior Court*, 66 Cal. App. 3d 504, 508-09 (1977) and *Romadka v. Hoge*, 232 Cal. App. 3d 1231, 1236-37 (1991)). In this scenario the Ninth Circuit requires an evidentiary hearing. *See Callie v. Near*, 829 F.2d 888, 890 (1987) ("Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing."). Because Yeager would be bound by the settlement agreement if his counsel had authority, he bears the burden to demonstrate his attorney acted without his authority. *Anand*, 626 F. Supp. 2d at 1067-68 (citing *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625 (1948)). The court also notes that by asserting this claim, Yeager in all probability waives the attorney client privilege at the evidentiary hearing. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("[P]arties in litigation may not abuse the [attorney-client] privilege by asserting claims the opposing party cannot adequately dispute unless it has

8

access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege.").

### 3. Sanctions

Finally, because Parsons Behle has not shown Yeager acted in bad faith, the court declines to impose sanctions here.

In conclusion the court ORDERS as follows:

(1) A one-day evidentiary hearing is SET for January 20, 2015 at 10:00 a.m.

(2) The parties shall file a joint pre-hearing stipulation and report no later than January 5, 2015, listing (a) disputed and undisputed questions of fact, (b) exhibits each party may present at the hearing, (c) witnesses each party may call at the hearing, and (d) any evidentiary objections.

(3) A final pre-hearing status conference is SET for January 8, 2015 at 2:30 p.m.

(4) Parson Behle's motion for sanctions is DENIED.

IT IS SO ORDERED.

DATED: November 20, 2014.

_____
UNITED STATES DISTRICT JUDGE