UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AT&T MOBILITY LLC,<br><br>                   Plaintiff,<br><br>       v.<br><br>GENERAL CHARLES E. "CHUCK" YEAGER (RET.); ED BOWLIN; CONNIE BOWLIN; AVIATION AUTOGRAPHS; BOWLIN & ASSOCIATES, INC.; LAW OFFICES OF JOANNA R. MENDOZA, P.C.; DE LA PENA & HOLIDAY, LLP; LESSER LAW GROUP,<br><br>                   Defendants. | No. 2:13-cv-0007-KJM-DAD<br><br>ORDER |

The court's previous order set an evidentiary hearing on the issue of R. Parker White's authority to enter a settlement agreement on behalf of his former client,[1] General Charles E. ("Chuck") Yeager, Ret. Order Nov. 21, 2014, ECF No. 139. The hearing is currently set for February 24, 2015. Minute Order Dec. 10, 2014, ECF No. 141. On November 26, 2014, Parsons Behle & Latimer issued a subpoena to Mr. White's firm, Poswall, White & Cutler (PWC). Mot. Enforce Ex. A, ECF No. 144-2. Parsons Behle's subpoena sought production of communications

---

[1] The court granted Mr. White's motion to withdraw on January 14, 2015. Order, ECF No. 145.

between General Yeager and PWC about the settlement agreement and the vacating of the trial previously set in this case. *See id.* Ex. A, at 4–5; Notice of Settlement, ECF No. 126; Minute Order Sept. 5, 2014, ECF No. 127. PWC objected to the subpoena on December 22, 2014, Obj. to Subpoena, ECF No. 143, citing attorney-client privilege, and Parsons Behle brought the pending motion to enforce on January 14, 2015, Mot. Enforce, ECF No. 144. General Yeager opposes the motion. Supp. Opp'n, ECF No. 150. After considering the parties' positions, the court GRANTS the motion to enforce the subpoena for the reasons discussed below.

I.    DISCUSSION

The Federal Rules of Evidence apply to all "proceedings in United States courts," Fed. R. Evid. 101, including to questions of privilege, regardless of the stage of the case or proceeding. *Id.* R. 1101(c). Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *Id.* R. 501. This case is civil, and the court has adopted the position that California law governs the determination of Mr. White's authority, Order Nov. 21, 2014, ECF No. 139, so California's rules on attorney-client privilege apply to the evidentiary hearing.

The California Evidence Code describes rules of attorney-client privilege. The parties do not dispute that Mr. White and General Yeager were lawyer and client as those terms are described in the evidence code. *See* Cal. Evid. Code §§ 950–951. As a general rule, a client "has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer," whether claimed by client or lawyer. *Id.* § 954. A "confidential communication between client and lawyer" "means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence . . . , and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." *Id.* § 952. A client may both refuse to disclose privileged communications and prevent another from disclosing them. *Id.* § 954. A lawyer who made or received a privileged communication must also claim the attorney-client privilege when the client demands. *Id.* § 955. Here, Parsons Behle's subpoena requests production of six classes of documents:

/////

> 1. All documents that constitute, contain, evidence, reflect or refer to any communication between [PWC] and [General Yeager] concerning [PWC's] authority to discuss or negotiate any settlement of the above-captioned matter.
>
> 2. All documents that constitute, contain, evidence, reflect or refer to any communication during the relevant time period between [PWC] and [General Yeager] concerning the settlement or potential settlement of the above-captioned matter with [Parsons Behle].
>
> 3. All documents that constitute, contain, evidence, reflect or refer to any communication between [PWC] and [General Yeager] concerning the draft settlement agreements exchanged in this case on September 4, 2014.
>
> 4. All documents that constitute, contain, evidence, reflect or refer to any communication between [PWC] and [General Yeager] relating to the email sent by [PWC] at 1:30 p.m. (Pacific) on September 5, 2014, indicating that a certain written settlement agreement reflected "the agreement of the parties."
>
> 5. All documents that constitute, contain, evidence, reflect or refer to any communication between [PWC] and [General Yeager] concerning the Joint Notice of Settlement filed with the Court on September 5, 2014, representing that "the Parties have reached a settlement in the above-entitled matter."
>
> 6. All documents that constitute, contain, evidence, reflect or refer to any communication between [PWC] and [General Yeager] concerning the reasons for the vacating of the trial date set for September 8, 2014.

Mot. Enforce Ex. A, at 4–5 (capitalization altered). These requests seek production of communications that would likely fall within the protective rule of California Evidence Code section 954. The parties do not dispute this conclusion; rather, Parsons Behle contends an exception applies. *Id.* at 3.

Several exceptions circumscribe the privilege. *See* Cal. Evid. Code §§ 956–962. Most applicable here, "[t]here is no privilege . . . as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship." *Id.* § 958. Section 958 is meant "to avoid the injustice of permitting 'a client either to accuse his attorney of a breach of duty and to invoke the privilege to prevent the attorney from bringing forth evidence in defense of the charge or to refuse to pay his attorney's fee and invoke the privilege to defeat the attorney's claims.'" *People v. Ledesma*, 39 Cal. 4th 641, 694 (2006) (quoting Cal. Evid. Code § 958 Cal. Law Revision Com. Rep.). The exception also reaches

3

1 beyond this circumstance.  For example, a criminal defendant cannot claim ineffective assistance
2 of counsel but withhold relevant communications as privileged in later habeas corpus
3 proceedings.  *Id.* at 690–91; *Gross Belsky Alonso LLP v. Henry Edelson*, No. 08-4666, 2009 WL
4 1505284, at *3 (N.D. Cal. May 27, 2009) (citing *Styles v. Mumbert*, 164 Cal. App. 4th 1163, 1168
5 (2008)).  At the same time, section 958 "is not a general client-litigant exception allowing
6 disclosure of *any* privileged communication simply because it is raised in litigation." *Brockway
7 v. State Bar*, 53 Cal. 3d 51, 63 (1991) (emphasis in original).  "[T]he fact that communications
8 with a lawyer may be probative on issues in a lawsuit, *even issues injected by the client himself*,
9 does not preclude assertion of the privilege."  *Samuels v. Mix*, 22 Cal. 4th 1, 27 n.4 (1999)
10 (Baxter, J., dissenting on other grounds) (emphasis in original) (citing *Brockway*, 53 Cal. 3d at
11 63–64) (other citations omitted).  Thus, section 958 does not extend to communications with
12 attorneys other than the attorney sued for misconduct because the defendant attorney does not
13 need these third-party-attorney communications to assert a defense.  *See, e.g.*, *Brockway*, 53 Cal.
14 3d at 63–64; *Schlumberger Ltd. v. Super. Ct. of L.A. Cty.*, 115 Cal. App. 3d 386 (1981).

15         Although the attorney-client privilege and its exceptions are defined by statute, not
16 common law, *Wells Fargo Bank v. Superior Court*, 22 Cal. 4th 201, 206 (2000), California courts
17 have held that a client may implicitly waive the attorney client privilege by placing an ordinarily
18 privileged matter at issue.[2]  *See, e.g.*, *Transamerica Title Ins. Co. v. Superior Court*, 188 Cal.
19 App. 3d 1047, 1052 (1987).  "It is said that in that case the gravamen of the lawsuit is so
20 inconsistent with the continued assertion of the privilege as to compel the conclusion that the
21 privilege has in fact been waived." *Id.*; *see also Wilson v. Superior Court*, 63 Cal. App. 3d 825,
22 830 (1976) (a client waives the privilege when "establishment of all the essential elements of
23 plaintiff's case will be impossible without proof of statements" subject to the attorney client
24 privilege).  Federal law mirrors this position.  *See, e.g.*, *Chevron Corp. v. Pennzoil Co.*, 974 F.2d
25 /////

---

[2] A client's waiver of the privilege is distinct from an exception to the privilege.  *See, e.g., People v. Clark*, 50 Cal. 3d 583, 619 n.28 (1990), *as modified on denial of reh'g* (June 7, 1990) (holding statements are subject to the attorney-client privilege "unless defendant waived those privileges or an exception permits disclosure").

4

1156, 1162 (9th Cir. 1992) ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived.").

No California decision directly disposes of the privilege question here, but the purposes of section 958 and general principles of fairness require resolution in favor of Parsons Behle.  General Yeager essentially claims Mr. White breached the duty of communication by entering a settlement agreement without authorization.  *See Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 407 (1985) (an attorney must have his client's express authorization to settle a case).  *See also Ledesma*, 39 Cal. 4th at 696 (extending section 958 to a third party's defenses, i.e., to the state's case in a habeas corpus proceeding, "precisely . . . the type of situation" anticipated by section 958).  Parsons Behle faces a client's claim of his attorney's breach of duty.  To deny Parsons Behle access to relevant privileged communications would render its position indefensible.  Even were the statutory exception inapplicable, by asserting Mr. White's lack of authority, General Yeager has impliedly waived his privilege; the California Court of Appeals has recognized "the inherent unfairness in allowing a plaintiff to bring a claim, which, by its very nature necessitates a defense based on confidential information . . . ."  *People ex rel. Herrera v. Stender*, 212 Cal. App. 4th 614, 647 (2012), *as modified* (Jan. 16, 2013).  Sustaining the privilege in a case like this would allow the client to use it both as sword and shield, impermissibly.

II.     CONCLUSION

Notwithstanding the discussion above, Parsons Behle's requests are broad and may require production of documents not necessary to its case.  The court therefore orders as follows:

(1) Parsons Behle's motion to enforce the subpoena, ECF No. 144, is GRANTED as to any documents relevant to Mr. White's authority to settle this case.

(2) Immediately upon receipt, Parsons Behle shall serve on General Yeager copies of all documents produced by PWC in response to the subpoena.

(3) At any time before the evidentiary hearing, General Yeager may file objections to any documents produced in response to the subpoena.  Objections may be based on any of the

/////

Federal Rules of Evidence and may include a renewed objection based on attorney-client privilege. General Yeager shall identify and describe the grounds for each objection.

(4) This order does not limit General Yeager's ability to object that testimonial evidence presented at the hearing is protected by the attorney-client privilege.

IT IS SO ORDERED.

DATED: February 11, 2015.

_____
UNITED STATES DISTRICT JUDGE