UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AT&T MOBILITY LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>GENERAL CHARLES E. "CHUCK"<br>YEAGER (RET.), et al.,<br><br>        Defendants. | No.  2:13-cv-0007-KJM-DAD |
| GENERAL CHARLES E. "CHUCK"<br>YEAGER (RET.), et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>PARSONS BEHLE & LATIMER, et al.,<br><br>        Defendants. | No.  2:14-cv-2544 KJM DAD<br><br>ORDER |

General Charles E. "Chuck" Yeager (Ret.) and Victoria Yeager, his wife, are

parties in both cases captioned above: first, the interpleader case, *AT&T Mobility LLC v. Yeager, et al.*, No. 13-0007 (E.D. Cal. filed Jan. 2, 2013), and second, the malpractice case, *Yeager et al. v. Parsons Behle & Latimer et al.*, No. 14-2544 (E.D. Cal. filed Oct. 1, 2014).  Those cases share

1

a third case as a common ancestor, *Yeager v. AT&T Mobility, LLC*, No. 07-2517 (E.D. Cal. filed Nov. 21, 2007), the AT&T case, which involved General Yeager's right of publicity.

On June 5, 2015, the Yeagers each moved[1] for my recusal from Case No. 13-007, ECF No. 195, and Case No. 14-2455, ECF No. 38.  They rely on 28 U.S.C. § 455 and argue for recusal on four grounds: (1) bias as a result of concurrent assignment of the three related cases identified above; (2) bias based on a connection to Katherine O'Neal, a member of the Lesser Law Group; (3) bias based on an association with Andrew Stroud; and (4) anticipatory bias because the Yeagers intend to call me as a witness in the pending interpleader and malpractice cases.  On July 10, 2015, plaintiff-in-intervention Parsons Behle & Latimer, PLC filed a response. ECF No. 201.  Also on July 10, 2015, the Bowlin defendants[2] filed an opposition and evidentiary objections.  ECF No. 202.  Having determined the matter appropriate for resolution without a hearing, and having carefully considered the issues presented, I deny both motions.

I.      BACKGROUND

A.      The Three Related Cases

The three related Yeager cases share a gnarled history.  In November 2007, General Yeager filed a complaint in this court, alleging AT&T Mobility LLC and others had used his name to promote its products without his permission.  Case No. 07-2517, ECF No. 1.  At that time, a different judge, now retired, presided over the case.  John Zarian and Kennedy Luvai (*pro hac vice*) of Parsons Behle & Latimer represented General Yeager.[3]  The defendants were represented by Andrew Stroud, Yale Lewis (*pro hac vice*), Whitney Furman (*pro hac vice*), Ronald Kohut, and Laura Hoopis.  *See* Case No. 07-2517, ECF Nos. 7, 10, 11, 107.

---

[1] Pending my determination of General Yeager's competency, I consider his motion as if he has prepared and filed it himself, although I have raised a doubt about his ability to do so.

[2] The Bowlin defendants include Connie Bowlin, individually and as executor of the estate of her deceased husband Ed Bowlin, Aviation Autographs, and Bowlin & Associates.

[3] General Yeager was also represented at other times by several other attorneys.  *See* Case No. 07-2517, ECF Nos. 1 (Robert Eliason and Norman Morrison IV), 31 (pro se), 34 (Steven McDonald), 73 (Charles Harder), 84 (pro se), 89 (Joanna Mendoza), 95 (pro se), 106 (John Zarian), 306 (pro se).

Before trial, the defendants moved for summary judgment, Case. No. 07-2517, ECF No. 48, and the prior judge denied the motion, Case. No. 07-2517, ECF No. 66.[4]  I was assigned to the case in 2011, Case. No. 07-2517, ECF No. 91, and in July 2011, the defendants moved for reconsideration of summary judgment, Case. No. 07-2517, ECF No. 98.  I denied the motion, Case. No. 07-2517, ECF Nos. 104, 110, and the case proceeded to trial.  The jury awarded General Yeager $135,000, Verdict, Case. No. 07-2517, ECF No. 227, and I then granted General Yeager's motion for attorneys' fees and costs in the amount of $173,585.72, Case. No. 07-2517, ECF No. 270.[5]

In January 2013, AT&T, represented by Donald Kohut and Laura Hoopis, filed a complaint in interpleader, depositing the funds awarded with the court.  Case No. 13-0007, ECF No. 1.  AT&T's complaint described several adverse claims to that money, including from General Yeager, Connie and Ed Bowlin, Joanna Mendoza, De la Pena & McDonald, LLP, and the Lesser Law Group.  *Id.* at 2–3.  Parsons Behle also intervened and asserted a claim derived from unpaid legal fees incurred during trial of the AT&T case.  Case No. 13-0007, ECF No. 91. Without objection, the interpleader was related to the case previously tried and reassigned to me. Case No. 13-0007, ECF No. 53.  AT&T was dismissed.  Case No. 13-0007, ECF No. 65.

A new trial very nearly began on the fee dispute between Parsons Behle and General Yeager, but four days before the trial, General Yeager and Parsons Behle notified the court they had settled, and the trial was vacated.  Case No. 13-0007, ECF No. 127.  At the time, General Yeager was represented by yet another attorney, Parker White.  Case No. 13-0007, ECF No. 100.  General Yeager refused to sign the settlement agreement, however, declaring he had not agreed to its terms, and Parsons Behle sought an order enforcing the agreement.  Case No. 13-0007, ECF No. 128.  Parker White withdrew.  Case No. 13-0007, ECF Nos. 129, 145.  I found the settlement agreement would be enforceable if Parker White had possessed authority to enter into

---

[4] The court granted the defendants' motion for a certificate of appealability, Case No. 07-2517, ECF No. 75, but the Ninth Circuit denied the petition for permission to appeal, Case No. 07-2517, ECF No. 76.

[5] The award was later supplemented.  Case No. 07-2517, ECF No. 305.

1   it on the Yeagers' behalf, and set an evidentiary hearing on that question.  Case No. 13-0007,

2   ECF No. 139.  After Mrs. Yeager intervened, Case No. 13-0007, ECF No. 164, the court held a

3   hearing on March 24, 2015, Case No. 13-0007, ECF No. 167, at which Parker White testified,

4   General Yeager represented himself and Mrs. Yeager represented herself.

5            General Yeager's demeanor and behavior at the evidentiary hearing raised

6   substantial questions in my mind about his competency to continue without representation, and I

7   ordered the parties to submit briefs to respond to the suggestion that a hearing on that question

8   was required.  Case No. 13-0007, ECF No. 169.  The parties submitted responsive briefs, and I

9   then held a hearing to determine whether General Yeager would consent to the appointment of a

10  guardian ad litem.  Case No. 13-0007, ECF No. 193.  At the hearing, General Yeager was unable

11  to respond cogently to most of my questions.

12           In the meantime, the Yeagers had filed a complaint in state court alleging Parsons

13  Behle was liable for legal malpractice.  Case No. 14-2544, ECF No. 1 (filed Oct. 1, 2014).  The

14  malpractice case was removed to this court, related to the other two cases, and reassigned without

15  objection to me.  Case No. 14-2544, ECF No. 7.

16           B.      Katherine O'Neal

17           The Yeagers aver that an attorney for my husband and mother-in-law is a partner

18  in a law firm for which a Katherine O'Neal serves as "Of Counsel."   They say Ms. O'Neal also is

19  a member of one of the many law firms identified as a defendant in Case No. 13-0007,

20  specifically the Lesser Law Group.  In support of these representations, Mrs. Yeager has filed a

21  declaration attaching copies of pages she identifies as appearing on the internet web sites for the

22  two law firms and showing Ms. O'Neal's professional biographies.  Mrs. Yeager also attaches a

23  printout of a docket for a case filed in Sacramento Superior Court in October 2007 and naming

24  the North Sacramento Land Company, my husband and mother-in-law and two others as

25  defendants.  The docket shows my husband and mother-in-law represented by a "Martin H.

26  Dodd."  It also shows the case was settled and dismissed with prejudice in July 2008.

27           For the purposes of this motion, the court puts aside whether the exhibits Mrs.

28  Yeager provides are properly authenticated and, in the interests of transparency, takes them at

4

1   face value.  Having reviewed them carefully, here is what I can say:  My husband is currently the

2   President of the North Sacramento Land Company; his mother previously served in that position.

3   I have no financial interest in the Company, and do not participate in decision-making related to

4   its operations or any litigation it faces.  I do at times overhear my husband discussing his

5   business, typically after hours and at times when he is on the phone to other parties whose

6   identities I usually do not know.  Until reviewing the Sacramento Superior Court docket Mrs.

7   Yeager provides, I do not recall ever knowing the Company had been sued in the case identified

8   on the docket.  I also do not recall knowing that the Company ever retained an attorney named

9   Martin Dodd.  Nor do I recall ever knowing or interacting with Ms. O'Neal.  I do not mean to

10  suggest Mr. Dodd and Ms. O'Neal are not memorable; if we have met it is entirely my memory

11  that fails me.  The Yeagers indicate, as of the filing of their motions to recuse, they intend to call

12  Ms. O'Neal as a witness in both pending cases.  Ms. O'Neal has never made an appearance in

13  Case No. 13-0007 as a member of the Lesser Law Group, nor is she identified on the pleadings.

14  All appearances for that defendant have been made by Donald Lesser.  *See* Case No. 13-0007,

15  ECF Nos. 15, 42, 43, 70, 85.  The Lesser Law Group is not a defendant, or identified in any way,

16  in the Yeagers' malpractice action against Parsons Behle.

17          C.      Andrew Stroud

18          The Yeagers' motions note, correctly, that I worked as an Associate at the

19  Sacramento office of Orrick, Herrington & Sutcliffe LLP from 1995 to 2000, at the time Andrew

20  Stroud was a more senior Associate.  During that time, in about 1996, I was assigned to work

21  with Mr. Stroud, and other attorneys, on a common law trademark case, *California Journal v. The*

22  *Wall Street Journal.*  I also was assigned to work with Mr. Stroud as part of the litigation team in

23  other cases as well.

24          The Yeagers also note that Mr. Stroud and I are both Charter Members of the

25  Eastern District Historical Society, which was formed in or about 2001.  Mrs. Yeager's

26  declaration attaches a list of Charter Members, which includes a "Kim J. Mueller," the form of

27  my name I used in law practice.  To the best of my recollection, the District Judge and attorneys

28  who formed the Historical Society sent a letter at the time to many if not all members of the

1    Eastern District bench and bar, inviting them to become Charter Members.  I recall responding to

2    that letter by joining the Society, a matter of completing a simple form and writing a check.  I do

3    not recall ever discussing the matter with Mr. Stroud.

4            The Yeagers further note, correctly, that Mr. Stroud serves on the Board of

5    Directors for the Sacramento Federal Judicial Library and Learning Center Foundation, on which

6    I serve *ex officio*, as a nonvoting member.  I do on occasion discuss the business of the

7    Foundation with Mr. Stroud directly; I also attend Board meetings whenever  I can.

8            The Yeagers also say that Mr. Stroud and I "socialize together," referencing a

9    retirement ceremony for another judge of the court for which I served as emcee, and during which

10   Mr. Stroud made a presentation.  I recall emceeing the ceremony, attended by hundreds of people;

11   my memory refreshed, I recall that Mr. Stroud presented the retiring judge with a piece of art.

12   While I do not consider the judicial retirement event a prime example of "socializing together," I

13   have in fact socialized on occasion with Mr. Stroud, and I do consider him a friend.

14           The Yeagers further note that Mr. Stroud attended my confirmation hearing before

15   the Senate Judiciary Committee on April 16, 2010, where I introduced him as a "former

16   colleague," in the course of introducing a number of other persons also in attendance.

17           Finally, the Yeagers note that Mr. Stroud was an attorney in the underlying case of

18   *Yeager v. AT&T*, Case No. 07-2517, which was reassigned to me in January 2011, after my

19   appointment as a District Judge.  As noted above, I did in fact preside over that case through the

20   trial and jury verdict on June 8, 2012, and also handled all post-trial motions and matters.  Mr.

21   Stroud's name appeared on pre-trial pleadings during the time I presided over that case; a review

22   of the docket suggests his firm served as local counsel while lead counsel hailed from elsewhere

23   in California.  The docket of the case also shows the following: In October 2011, I adopted

24   findings and recommendations from the magistrate judge denying a motion for reconsideration

25   Mr. Stroud had filed.  ECF No. 110.  Mr. Stroud appeared at a final pretrial conference in

26   November 2011.  ECF No. 112.  He filed a declaration in support of defendants' motions in

27   limine, and oppositions to the Yeagers' motions in limine.  ECF Nos. 127, 136, 140–147; *see also*

28   ECF Nos. 160–163.  Mr. Stroud did not appear at hearing on the motions in limine, although an

1     associate from his firm did.  ECF No. 167.  I ultimately ruled on the motions in limine, granting

2     some, denying some, sometimes in whole or in part.  *See* ECF No. 204.  Mr. Stroud did not assist

3     in trial of the case; his associate attended the trial and played a bit part, again apparently as local

4     counsel.  After trial, at which General Yeager prevailed in part, Mr. Stroud filed a declaration in

5     opposition to an award of attorney's fees; lead counsel litigated the fees motions.  ECF Nos. 250,

6     252.  I ultimately granted in part the Yeagers' attorneys' motion for fees and costs.  ECF No. 270.

7     As noted, AT&T has deposited the amount awarded in the interpleader action, Case No. 13-0007.

8     At no time during litigation of the underlying case, Case No. 07-2517, or the litigation of any of

9     the related cases have I discussed any aspect of any case or the parties involved with Mr. Stroud.

10     This is consistent with the judicial canons I follow, and is my standard practice in all cases before

11     me, including cases in which my association with counsel is equivalent to the association I have

12     had and continue to have with Mr. Stroud.  *See generally* Code of Conduct for United States

13     Judges; *cf. Cheney v. U.S. District Court*, 541 U.S. 913, 915 (2004) (Associate Justice's account

14     of hunting trip with Vice President, during which "[o]f course we said not a word about the

15     present case").

16         D.     Intent to Call Me As A Witness

17         The Yeagers' motions to recuse provide the first and only generalized notice to me

18     that they intend to call me as a witness in the two pending cases.

19     II.     APPLICABLE LAW

20         Section 455(a) of title 28 requires a judge to disqualify herself "in any proceeding

21     in which [her] impartiality might reasonably be questioned."  "The goal of section 455(a) is to

22     avoid even the appearance of partiality."  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S.

23     847, 860 (1988) (citation and quotation marks omitted).  The judge must "ask 'whether a

24     reasonable person with knowledge of all the facts would conclude that the judge's impartiality

25     might reasonably be questioned.'"  *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008)

26     (quoting *Clemens v. U.S. Dist. Ct.*, 428 F.3d 1175, 1178 (9th Cir. 2005)).  This "reasonable

27     person" is not "hypersensitive or unduly suspicious" but rather a "well-informed, thoughtful

28     observer."  *Id.* (quotation marks and citation omitted).  In all, a judge must "be and appear to be

1   impartial," but judges must not "recuse themselves unless required to do so, or it would be too

2   easy for those who seek judges favorable to their case to disqualify those that they perceive to be

3   unsympathetic merely by publicly questioning their impartiality." *Perry v. Schwarzenegger*, 630

4   F.3d 909, 916 (9th Cir. 2011).

5           In addition to avoiding the appearance of partiality in general, certain specific

6   circumstances also require recusal. *See* 28 U.S.C. § 455(b); *see also Preston v. United States*,

7   923 F.2d 731, 734 (9th Cir. 1991) ("Section 455(a) covers circumstances that appear to create a

8   conflict of interest, whether or not there is actual bias. Section 455(b) covers situations in which

9   an actual conflict of interest exists, even if there is no appearance of one. Section 455(b) also

10  describes situations that create an apparent conflict, because it provides examples of situations in

11  which a judge's impartiality might reasonably be questioned pursuant to section 455(a)."

12  (citation, emphasis, and quotation marks omitted)). For example, a judge must disqualify herself:

13          (1) Where [she] has a personal bias or prejudice concerning a party
14          . . . ;

15          (2) Where in private practice [she] served as lawyer in the matter in
            controversy, or a lawyer with whom [she] previously practiced law
            served during such association as a lawyer concerning the matter, or
16          the judge or such lawyer has been a material witness concerning it;

17          . . .

18          (5) [She] or [her] spouse, or a person within the third degree of
            relationship[6] to either of them, or the spouse of such a person: (i) Is
19          a party to the proceeding, or an officer, director, or trustee of a
            party; . . . [or] (iv) Is to the judge's knowledge likely to be a
20          material witness in the proceeding.

21  28 U.S.C. § 455(b).

22          Motions to recuse must be filed in a timely fashion. *Preston*, 923 F.2d at 732–33.

23  Otherwise judicial time and resources may be wasted, and litigants may use motions to recuse for

24  strategic purposes. *Id.* at 733. No per se rule divides timely from untimely motions, but the

25  _____

26          [6] "[T]he degree of relationship is calculated according to the civil law system." 28 U.S.C.
    § 455(d)(2). According to that system, as relevant here, parents and children are related in the
27  first degree. *Njie v. Lubbock Cnty., Tex.*, 999 F. Supp. 858, 862 (N.D. Tex. 1998) (citing 23 Am.
    Jur. 2d Descent and Distribution § 55 (1983)), *aff'd*, 200 F.3d 816 (5th Cir. 1999) (per curiam).
28

1  standard is one of reasonableness: "recusal motions should be filed with reasonable promptness

2  after the ground for such a motion is ascertained." *Id.*  While the Yeagers' motions come quite

3  late in the game, and the information they present is not new and in some instances is quite stale, I

4  exercise my discretion to consider the merits of the arguments they make.

5  　　　　The decision to recuse or not itself is an exercise of discretion, and one I do not

6  take lightly.  *United States v. Johnson*, 610 F.3d 1138, 1147 (9th Cir. 2010).

7  III.　　DISCUSSION

8  　　　　A.　　Bias as a Result of Presiding over Related Cases

9  　　　　The Yeagers have cited no authority for their argument that I must recuse myself

10  in light of my assignment to all three of the related cases.  Neither am I aware of any such

11  authority.  The cases were related following the procedure described in the Local Rules and in an

12  effort to avoid duplication of effort, and the orders relating the cases drew no objections or

13  motions for reconsideration.

14  　　　　B.　　Katherine O'Neal and the Lesser Law Group

15  　　　　The Yeagers also cite no authority, apart from pointing to section 455, in support

16  of their position that Ms. O'Neal, who has never appeared in any of the related *Yeager* cases, has

17  a purported connection to an attorney who apparently handled a case seven to eight years ago for

18  my husband's company, my husband and his mother, and therefore I must recuse.  While section

19  455(b)(5) mentions a judicial spouse, the spouse or the person related to the spouse must be a

20  party to the proceeding currently before the judicial officer for the suggestion of recusal to arise.

21  *See* 28 U.S.C. § 455(b)(5); *see also, e.g., In re Specht*, 622 F.3d 697, 699 (7th Cir. 2010)

22  ("[Section 455(b)(5)(i)] applies only to the relation between a judge and a party.").  The

23  suggestion that Ms. O'Neal qualifies as a potential material witness with respect to any of the

24  *Yeager* cases has no basis in the information before the court.

25  　　　　C.　　Andrew Stroud

26  　　　　The Yeagers apparently rely on the language of section 455(b)(2) in arguing that

27  my professional association and friendship with Mr. Stroud requires recusal.  But none of the

28  facts provided above fits the strictures delineated in the statute:  I never served as a lawyer in any

9

1   of the three related *Yeager* cases.  Mr. Stroud did not serve as a lawyer in any of the *Yeager* cases

2   during the time we practiced together at the Orrick firm, more than fifteen years ago.  Mr. Stroud

3   has served solely as one attorney in the underlying right of publicity action; he is not a party

4   himself and has not been a "material witness" to any aspect of the case such that his testimony

5   can reasonably be required.[7]  Nor am I able to identify any other factors or considerations that

6   counsel in favor of recusal.

7         While Mr. Stroud is a friend, our friendship has not prevented me from observing

8   the judicial canons designed to preserve a judge's impartiality and independence.  It certainly has

9   not stood in the way of my letting the chips fall where the law requires, deciding quite a number

10  of questions presented to me against Mr. Stroud's client and in favor of the Yeagers.  The

11  suggestion to the contrary calls to mind the observation of a much more elevated Article III judge,

12  held to somewhat different standards:  "If it is reasonable to think that a [federal judge] can be

13  bought so cheap, the Nation is in deeper trouble than I had imagined."  *Cheney*, 541 U.S. at 929

14  (Scalia, J.).  Here, I am a federal trial judge and my jurisdiction is the Eastern District.  Having

15  carefully considered the questions presented by the pending motions, I am as certain as I can be

16  that the District is not in such trouble as the Yeagers suggest.

17        D.      Testimony as a Witness in this Case

18        A judge may not testify in a trial over which she presides.  Fed. R. Evid. 605.  The

19  Yeagers do not describe any bases for calling me as a "material witness" under section 455(b)(2)

20  or identify what type of proceeding would allow for eliciting testimony.  They have described no

21  facts that would lead a reasonable observer to question my impartiality, and I am unaware of any

22  facts that render me unable to continue to decide these cases fully and fairly.  I have no personal

23  bias or prejudice with respect to either of the Yeagers, as I believe is clear from an objective

24  review of the dockets of the cases over which I have presided and continue to preside.  I

25  recognize my duty to recuse when I cannot perform my job as a judge with the independence and

26  _____

27        [7] Mr. Stroud probably would not have been qualified to serve as a witness in that case.
    *See* Cal. R. Prof'l Conduct 5-210 (generally prohibiting members of the California bar from
    serving as "an advocate before a jury which will hear testimony from the member").

28

1   impartiality required by Article III of the Constitution.  At the same time, I am keenly aware of

2   the duty not to recuse unless recusal is required by the canons and the law.  If I were to recuse

3   simply because the Yeagers have challenged my role as their presiding judge, I would be

4   endorsing a form of reverse job-shopping that the federal courts abhor.  This I decline to do.

5   IV.   <u>CONCLUSION</u>

6            The motions are DENIED.  This order resolves ECF No. 195 in Case No. 13-0007

7   and ECF No. 38 in Case No. 14-2455.

8            IT IS SO ORDERED.

9   DATED:  July 21, 2015.

10

11                                             _____

12                                             UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28