UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AT&T MOBILITY, LLC, | No. 2:13-cv-00007-KJM-DB |
| Plaintiffs, | |
| v. | <u>ORDER</u> |
| GENERAL CHARLES E. "CHUCK" YEAGER (RET.), et al., | |
| Defendants. | |

Victoria Yeager previously intervened in this action, which concerns the distribution of an interpleaded damages award and attorneys' fees. She moves now for an order appointing her as a representative of her joint interests with her husband, General Charles E. "Chuck" Yeager (Ret.), who is also a party in this case and is among the several defendants who claim an interest in the interpleaded funds. Neither Mrs. Yeager nor General Yeager is represented by counsel, although a guardian ad litem has been appointed to represent General Yeager: James Houpt, an attorney.

Parsons Behle & Latimer, a law firm that intervened to claim an interest in the interpleaded funds, opposes Mrs. Yeager's motion. The court held a hearing on July 29, 2016. Mrs. Yeager appeared representing herself, and General Yeager appeared with Mr. Houpt. Parsons Behle was represented by Brook Bond and Kennedy Luvai, who appeared by telephone.

Mrs. Yeager's motion is denied to the extent the court declines to appoint Mrs. Yeager as a joint representative of her interests with General Yeager but granted to the extent she asks to intervene in an additional capacity.

I.     BACKGROUND

In 2012, General Yeager prevailed in part in a lawsuit filed in this court, *Yeager v. AT&T Mobility, LLC*, No. 07-2517 (E.D. Cal. filed Nov. 21, 2007). A jury awarded him $135,000, and the court then awarded him approximately $170,000 in attorneys' fees and costs. *See* Verdict, Case No. 07-2517, ECF No. 227; Order Dec. 19, 2012, Case No. 07-2517, ECF No. 270.[1]

In January 2013, AT&T filed a complaint in interpleader, depositing the amount of the award and fees with the court. ECF No. 1. AT&T's complaint described claims to that money, including from General Yeager and several attorneys. *Id.* at 2–3. The law firm that represented General Yeager in the AT&T trial, Parsons Behle, also intervened and made a claim based on fees incurred during the trial. ECF No. 91.

A new trial very nearly began on the fee dispute between Parsons Behle and General Yeager, but General Yeager and Parsons Behle notified the court they had settled, and the trial was vacated. ECF No. 127. At the time, General Yeager was represented by Parker White. ECF No. 100. General Yeager refused to sign the settlement agreement, however, declaring he had not agreed to its terms, and Parsons Behle sought an order enforcing the agreement. ECF No. 128. Parker White then withdrew. ECF Nos. 129, 145. The court found the settlement agreement would be enforceable if Parker White had possessed authority to agree to it and set an evidentiary hearing on that question. ECF No. 139.

Before the evidentiary hearing, the court granted Mrs. Yeager's motion to intervene so that she could protect her own interests. Order Mar. 5, 2015, ECF No. 164. The court clarified that she would not be permitted to "assert defenses on General Yeager's behalf or speak for him." *Id.* at 6 (citing E.D. Cal. L.R. 183(a) ("Any individual who is representing

---

[1] Unless otherwise noted, as for example in this citation, references to electronic case file numbers are to the docket in the case captioned above, No. 13-0007.

himself or herself without an attorney must appear personally or by courtesy appearance by an attorney admitted to the Bar of this Court and may not delegate that duty to any other individual, including husband or wife, or any other party on the same side appearing without an attorney.")).

General Yeager's demeanor and behavior at the evidentiary hearing caused the court to be concerned that he was not competent to appear in this case without a lawyer. After several conferences and a further hearing, the court determined the appointment of a guardian ad litem was necessary. Order Nov. 10, 2015, ECF No. 223. The court declined to appoint Mrs. Yeager because she is not an attorney. A guardian ad litem who is not an attorney must find representation in turn, and General and Mrs. Yeager had been attempting to hire a lawyer for a year without success. *Id.* at 13–14, 16–17. Given her intervention, Mrs. Yeager also has interests in this litigation that potentially conflict with General Yeager's interests, and she has taken inconsistent positions about his competence. *See id.* at 16. The court therefore appointed Mr. Houpt. Order Dec. 28, 2015, ECF No. 227.

Mr. Houpt prepared a report, ECF No. 245, and the court held a status conference to discuss his findings, Minutes, ECF No. 254. Mr. Houpt was unable to make a concrete recommendation about how General Yeager's interests could best be protected or about the fairness of the allegedly unauthorized settlement agreement. Mr. Houpt noted Mrs. Yeager's suggestion that she could represent the joint interests of herself and General Yeager in total or be substituted as his guardian ad litem, Status Report at 7, ECF No. 245, which he confirmed at the hearing. Mr. Houpt opined that this change would leave General Yeager in no worse a situation than he is in now, but he believes General Yeager ideally would be represented by counsel. *See id.*

After Mr. Houpt filed his report and before the most recent status conference, Mrs. Yeager moved to "intervene in all respects." *See* Mot. Intervene, ECF No. 248; Mem. P. & A., ECF No. 248-1. She asks the court for an order allowing her "to protect and defend the interests of her husband." Mem. at 2. She proposes two vehicles for her motion.

First, she cites a document filed previously in this case, an "assignment of interest." It purports to memorialize a June 2012 verbal assignment of General Yeager's "rights

3

and interests in his name, image, and trademarks as it relates to his claims and causes of action against and by AT&T" from himself to Mrs. Yeager and himself "in joint ownership with rights of survivorship," in exchange for $100. Yeager Decl. Ex. A, ECF No. 222. The assignment is dated September 2, 2015, and bears two signatures, one identified as General Yeager's and one as Mrs. Yeager's. *Id.* Under Mrs. Yeager's signature and typed signature line the following letters are written out in hand: "C. GCYI." *Id.*

Second, Mrs. Yeager cites two sections of the California Code of Civil Procedure: (1) section 370, which provides, "A married person may be sued without his or her spouse being joined as a party, and may sue without his or her spouse being joined as a party in all actions"; and (2) section 371, which provides, "If a husband and wife are sued together, each may defend for his or her own right, but if one spouse neglects to defend, the other spouse may defend for that spouse's right also."

Parsons Behle opposes Mrs. Yeager's motion. Opp'n, ECF No. 256. It argues the motion is an improper request for reconsideration of the court's previous orders. It also argues the assignment of rights is not enforceable and the statutory provisions are inapplicable to this situation, and that in any event, the motion is untimely. Mrs. Yeager filed a reply brief, explaining her disagreement on each point. ECF No. 257.

II. DISCUSSION

Whether Mrs. Yeager's motion is better understood as a motion for reconsideration or as a motion to intervene in an additional capacity, the decision to grant or deny it is one of discretion. *See* Opp'n at 8–9 (arguing the motion is untimely); *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (the timeliness of a motion to intervene is a "flexible concept" whose "determination is left to the district court's discretion"); *City of Los Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (a district court has the authority and discretion to reconsider any previous non-final order). Given the delay already introduced to this case, the incremental prejudice caused by Mrs. Yeager's delayed motion, if any, is minimal and does not by itself preclude its success.

As noted above, Mrs. Yeager suggests two means of asserting a joint marital interest: California Civil Code sections 370 and 371 and the assignment of rights. The court turns first to sections 370 and 371.

### A.     California Code of Civil Procedure Sections 370 and 371

Sections 370 and 371 cannot support Mrs. Yeager's request. Assuming for sake of argument that these sections do not conflict with Federal Rule of Civil Procedure 17, *see Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010), and assuming they embody substantive California law, *see In re Cty. of Orange*, 784 F.3d 520, 527 (9th Cir. 2015), *cert. denied sub nom. Tata Consultancy Servs. Ltd. v. Cty. of Orange, Cal.*, 136 S. Ct. 808 (2016), they would not apply to this case.

Section 370 provides that a married person "may be sued" and "may sue" without his or her spouse. That has already happened: AT&T named General Yeager as a defendant in interpleader, and Mrs. Yeager intervened; neither General Yeager's nor Mrs. Yeager's appearance was a prerequisite for the other's presence. Second, section 371 applies only "[i]f a husband and wife are sued together."[2] That has not occurred. AT&T sued General Yeager separately, and Mrs. Yeager intervened independently and by her own conation. Nothing in these sections suggests that California law endows spouses with the substantive right to represent one another or a joint spousal interest in every action.

Mrs. Yeager's motion cannot be granted on the basis of these sections.

### B.     The Assignment of Rights

The assignment of rights could support Mrs. Yeager's request if it is an enforceable contract. It evidences an assignment of General Yeager's rights and interests in this case to himself and Mrs. Yeager jointly. *See Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (an interest is sufficiently protectable, such that intervention is appropriate, if it is "protectable under some law" and is related to the claims in the present

---

[2] On July 1, 2016, the Governor of California approved and the Secretary of State chaptered an amendment to section 371, which will replace the phrase "a husband and wife" with the word "spouses." *See* 2016 Cal. Legis. Serv. Ch. 50 (West) (Senate Bill No. 1005). This change is intended to have only technical and nonsubstantive effect. *See id.* § 125.

5

1  litigation).  But General Yeager's diminished capacity, at least as early as March 2015, suggests
2  caution.
3        A contract is formed when two or more parties who are capable of contracting give
4  consent, provided their agreement pursues a lawful object and is supported by "sufficient cause or
5  consideration."  Cal. Civ. Code § 1550; *accord*, *e.g.*, *Lopez v. Charles Schwab & Co.*,
6  118 Cal. App. 4th 1224, 1230 (2004).  In California, everyone is capable of contracting "except
7  minors, persons of unsound mind, and persons deprived of civil rights."  Cal. Civ. Code § 1556.
8  California law creates a rebuttable presumption that a person's mind is unsound "if the person is
9  substantially unable to manage his or her own financial resources or resist fraud or undue
10  influence."  *Id.* § 39(b).  These provisions should not be understood in an overly literal or extreme
11  sense.  Many people with very limited capacity understand their surroundings generally; rather,
12  the "understanding" in question is an understanding of a contract's subject matter and purpose.
13  *See Jacks v. Estee*, 139 Cal. 507, 511 (1903).  Incompetency to enter a contract may arise by age,
14  physical condition, emotional state, or a combination of these factors.  *Smalley v. Baker*,
15  262 Cal. App. 2d 824, 834–35 (1968), *disapproved of on other grounds*, *Weiner v. Fleischman*,
16  54 Cal. 3d 476 (1991).
17        A person's ability to enter a contract is related to his ability to give consent.
18  Consent must be freely given.  Cal. Civ. Code § 1565.  For this reason a person "cannot be said to
19  assent unless he is endowed with such degree of reason and judgment as will enable him to
20  comprehend the subject of negotiation."  *Jacks*, 139 Cal. at 512–13 (citation, quotation marks,
21  and alterations omitted).
22        Here, during the March 2015 evidentiary hearing, the court developed substantial
23  concerns that General Yeager did not understand the nature of this litigation and the underlying
24  litigation with AT&T.  *See* Order Mar. 26, 2015, ECF No. 169.  Mrs. Yeager informed the court
25  during the hearing that this was her fear as well.  *See* Hr'g Tr. 106, ECF No. 178.  The court's
26  concerns were amplified in the months leading up to the formal hearing on General Yeager's
27  competence in September 2015.  *See* Order Nov. 10, 2015, at 2–9, ECF No. 223.  These
28  concerns—General Yeager's age and his physical condition, the complicated nature of this case,

1    and Mrs. Yeager's potentially conflicting interests—cast doubt on whether the assignment is an
2    enforceable contract under California law.
3          The assignment's timing in this litigation is also concerning. Despite its
4    description of an oral agreement struck in 2012, it is dated September 2, 2015. By that time,
5    Mrs. Yeager had changed her position with respect to General Yeager's competency. She argued
6    he was competent, whereas a few months before she had asserted he was not. When the
7    agreement was signed and filed, Mrs. Yeager had also taken the position that she should be
8    appointed as General Yeager's guardian ad litem, and alternatively, if she was not appointed, no
9    appointment was necessary because she could protect his interests by serving as his English-to-
10   English translator, a technique the court had tested at one point, and de facto attorney. *See* Order
11   Nov. 10, 2015, at 2, 5, 16, ECF No. 223.
12         For these reasons, before the hearing on Mrs. Yeager's motion, the court asked
13   Mr. Houpt to confirm whether General Yeager would challenge the assignment's enforceability
14   and whether the agreement remains in General Yeager's best interests. At hearing, Mr. Houpt
15   responded unequivocally that General Yeager would not challenge the assignment and that
16   recognition of the assignment was in General Yeager's best interests. Mr. Houpt responded that
17   he had spoken privately to General Yeager before the hearing and had assured himself that
18   General Yeager understood and agreed with the assignment's purpose. Because it appears the
19   assignment is at most voidable rather than void, *compare* Cal. Civ. Code § 38 *with id.* § 39(a),
20   and General Yeager will not challenge its enforceability, the court concludes Mrs. Yeager
21   possesses a joint interest with General Yeager in the damages award and attorneys' fees awarded
22   in the AT&T trial and interpleaded in this case and may intervene to protect that joint interest.
23         At hearing, Parsons Behle also argued the assignment could not support Mrs.
24   Yeager's motion because it refers to General Yeager's "name, image, and trademarks" and his
25   "legal causes of action, assets, and rights to his trademarks," but not to attorneys' fees. This is an
26   artificial distinction. The interpleaded funds include a damages award and an award of attorneys'
27   fees incurred in obtaining that damages award. Parsons Behle has cited no authority to support its
28   position in this respect, which it also raised for the first time at hearing. *Cf. Air Separation, Inc.*

7

*v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995) (noting in an unrelated context that "there exists no real distinction between judgments for attorneys' fees and judgments for other items of damages" (citation omitted)).

The court need not consider whether the interpleaded funds are a part of the Yeagers' community property under California law.

III. CONCLUSION

Mrs. Yeager's motion is **granted** to the extent she requests to intervene to represent her joint interests with General Yeager in this case, as memorialized in the assignment of his rights.

At the status conference in June 2016 and at the hearing on this motion, Mr. Houpt reported that if Mrs. Yeager could represent her joint interest with General Yeager, General Yeager's presence would no longer be necessary in this case. A substitution may be appropriate after a motion under Federal Rule of Civil Procedure 25(c),[3] or General Yeager could be dismissed from this case as a defendant in interpleader. **Within fourteen days,** Mrs. Yeager and General Yeager, represented by his guardian ad litem, shall file an appropriate motion and proposed order of substitution or dismissal.

In addition, **within fourteen days**, General Yeager shall file a notice, via his guardian ad litem, briefly explaining whether the General's interests in this case, considered individually or together with Mrs. Yeager, require an expansion of the evidentiary record with regard to Parker White's authority, as his former attorney, to enter the purported settlement agreement on his behalf. *See generally* Order, Nov. 21, 2014, ECF No. 139. **By the same date**, any other party may give notice of its position on this same question.

A status conference is set for **October 13, 2016, at 2:30 p.m. in Courtroom Three** to set a schedule for the remainder of this case. A joint status report including a proposed

---

[3] "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3)." Fed. R. Civ. P. 25(c).

8

1 schedule shall be filed no later than **October 6, 2016**.  In the court's discretion, the matter may be
2 submitted on this filing without the need for a conference.
3         IT IS SO ORDERED.
4 DATED: August 12, 2016.

                                  UNITED STATES DISTRICT JUDGE