UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AT&T MOBILITY LLC, | No. 2:13-cv-00007-KJM-DB |
| Plaintiff, | |
| v. | ORDER |
| GENERAL CHARLES E. "CHUCK" YEAGER (RET.); ED BOWLIN; CONNIE BOWLIN; AVIATION AUTOGRAPHS; BOWLIN & ASSOCIATES, INC.; LAW OFFICES OF JOANNA R. MENDOZA, P.C.; DE LA PENA & HOLIDAY, LLP; LESSER LAW GROUP, | |
| Defendants. | |

This is an interpleader action involving funds General Charles Yeager won in a jury verdict following a 2012 trial based on unauthorized use of his name. Several attorneys who had formerly represented General Yeager and his wife Victoria Yeager claimed entitlement to a portion of these funds. General Yeager initially hired attorney John Zarian and the law firm Parsons Behle & Latimer, PLC ("Parsons Behle") to represent him, but Parsons Behle later withdrew, intervened and claimed General Yeager had not paid his bills to them. Days before a new trial was set to begin on the Parsons Behle fee dispute, Parsons Behle and General Yeager's new attorney notified the court the parties had settled. The court then vacated the trial date.

1

Afterwards, General Yeager declined to sign the settlement agreement, contending he never agreed to the terms. Parsons Behle then moved to enforce the settlement. Mot., ECF No. 128. The court held an evidentiary hearing. H'rg Mins., ECF No. 167. As explained below, the court DENIES the motion. The court also DENIES as premature Mrs. Yeager's *ex parte* request to disburse a portion of the interpleaded funds. Request, ECF No. 364.

I. MOTION TO ENFORCE

 A. Background

  1. The Settlement Agreement

After denying Parsons Behle's motion for summary judgment on its complaint-in-intervention, the court scheduled a half day trial. Pretrial Conf. Mins., ECF No. 117. On September 4, 2014, four days before trial was to begin, Parsons Behle and General Yeager's new counsel, Parker White, began negotiating a settlement agreement. Zarian Decl., ECF No. 128-2, ¶ 6. The attorneys exchanged draft settlement agreements that day and the next before Mr. White signed a final version, which he confirmed "reflect[ed] the agreement of the parties, as in those expected to sign." *Id.* ¶¶ 6-9; Email, Ex. D, ECF No. 128-6 (original emphasis). The attorneys then filed a joint notice of settlement, anticipating they would file a final settlement agreement signed by the parties on or about October 3, 2014. Notice, ECF No. 126. Based on this representation, the court vacated the trial. Min. Order, ECF No. 127.

Over the following weeks, Mr. White was unable to obtain General Yeager's signature on the agreement. He eventually emailed Parsons Behle that he had "run into serious problems" and did not have a signed settlement agreement. Zarian Decl. ¶ 14. Parsons Behle then filed the instant motion, asking the court to enforce the settlement agreement, disburse $65,000.00 of the interpleaded funds to Parsons Behle, and impose sanctions. Mot. at 4-9. General Yeager signed an opposition consisting of a single-page declaration stating he "did not agree to the terms of the written settlement agreement," and "did not agree to give up [his] rights to sue John Zarian and/or Parsons Behle & Latimer et al [*sic*] for legal malpractice." Opp'n, ECF No. 130, at 4. Parsons Behle replied, contending the Yeagers were bound by Mr. White's promise on their behalf to settle. Reply, ECF No. 132.

After first holding a non-evidentiary hearing, the court issued an order partially resolving questions related to the agreement's enforceability, with one question outstanding. Prior Order, ECF No. 139. Specifically, the court affirmed its jurisdiction to enforce an agreement, should one exist; it also concluded Parsons Behle had entered into a settlement agreement based on communications with General Yeager's counsel, Mr. White. The court declined Parsons Behle's request to sanction General Yeager, finding Parsons Behle had not shown General Yeager acted in bad faith. *Id.* at 9. The court ordered an evidentiary hearing on the sole remaining question: Whether General Yeager authorized Mr. White to bind the General to this agreement. *Id.* at 5-9 ("If a client alleges an attorney acted without authorization, the question becomes one of fact to be resolved by taking evidence"; scheduling evidentiary hearing and concluding, "If indeed Mr. White had authority, [General] Yeager is bound.").

The court held the evidentiary hearing on March 24, 2015. *See* Tr., ECF No. 178. The court heard testimony from Mr. White, Mr. White's paralegal, and Mrs. Yeager. General Yeager elected not to testify or present evidence. Tr. 105:1-2. As the court turned to the issue of the parties' closing briefs, Mrs. Yeager asked for the first time to call General Yeager as a witness. Tr. 106:9-19. Mrs. Yeager also said at the evidentiary hearing, for the first time in the court's presence, that General Yeager could not understand the proceedings. Tr. 106:1-11. The court declined to reopen the hearing to allow General Yeager to testify. Tr. 108:1-5.

### 2. General Yeager's Competency and Mrs. Yeager's Role

The court explored its concerns regarding General Yeager's competency in a separate hearing six months later. Competency H'rg Mins., ECF No. 218 (Sept. 14, 2015). Based on the evidence presented at that hearing, the court held that the "appointment of a guardian ad litem [was] necessary to protect General Yeager's interests in this case." ECF No. 223 (Nov. 10, 2015). The following month, the court appointed James Houpt, a member of the court's pro bono panel, as General Yeager's guardian ad litem. Order, ECF No. 227 (Dec. 28, 2015).

Since then, Mrs. Yeager has taken a more active role in this litigation. First, in August 2016, the court granted Mrs. Yeager limited intervention rights to represent her own

financial interests in this case. Order, ECF 263. Four months later, upon Mr. Houpt's recommendation, the court granted Mrs. Yeager's request to substitute in for General Yeager such that she "step[ped] into General Yeager's shoes from [December 2, 2016] forward." Order, ECF No. 306 (granting ECF No. 267).

Although Mrs. Yeager is now active in this litigation, in March 2015, at the time of the evidentiary hearing on this motion, Mrs. Yeager had not yet intervened or been granted substitution rights. She nonetheless appeared to guide General Yeager's actions and spoke on his behalf throughout the hearing. *See, e.g.*, Tr. 6:18-20 (court noting "Mrs. Yeager is writing answers, apparently, for Mr. -- for General Yeager to read."). Mrs. Yeager's actions at the time took account of General Yeager's condition at the time; the General, who was in his early 90s, struggled to hear or understand the court proceedings. *See, e.g.*, Tr. 12:9-13 (court pausing testimony to determine whether General Yeager could understand and hear the testimony). In litigating this motion, both parties have treated Mrs. Yeager's conduct as relevant to assessing Mr. White's settlement authority. *See e.g.*, Tr. 19:15-22, 27:22-23, 28:9-15 (probing Mr. White for details about settlement discussions with Mrs. Yeager); *see also id.* at 35:3-10 (Mr. White affirming he "[g]enerally" believed, "during the course of [his] representation, that Mrs. Yeager was authorized by General Yeager to communicate with [Mr. White] concerning the subject of his representation."). Here, the court does consider Mrs. Yeager's conduct and testimony to the extent relevant to prove General Yeager's intent, giving her communications some weight.

3. Supplemental Briefing

At the March 2015 evidentiary hearing, the court invited closing briefs: Parsons Behle filed a brief on its own behalf; Mrs. Yeager filed briefing on her own behalf and General Yeager filed a brief on his own behalf. *See* Parsons Behle Br., ECF No. 181; General Yeager Br., ECF No. 180 (electronically signed); Mrs. Yeager Br., ECF No. 184 (handwritten signature). Fifteen months later, once appointed as General Yeager's guardian ad litem and upon the court's direction, Mr. Houpt filed a letter explaining his perspective on whether the settlement agreement is enforceable. *See* Houpt Letter, ECF No. 264 (Aug. 25, 2016). Parsons Behle requested an opportunity to file supplemental briefing in response, ECF No. 265 (Aug. 26, 2018), but the court

4

DENIES the request.  Considering the extensive record on this issue, and noting Parsons Behle's admissions that "Gen. Yeager's interests in this matter . . . do not warrant an expansion of the evidentiary record with regard to Mr. White's authority . . . to enter into the settlement agreement," *id.* at 2, the record as it stands is sufficiently clear.

As explained below, after carefully considering the evidence presented at hearing, the subsequent closing briefs and Mr. Houpt's letter, the court finds the record does not support the conclusion Mr. White had authority to bind General Yeager.  The settlement agreement is therefore unenforceable.

B.  Legal Standard

In order for the court to exercise its "equitable power to enforce summarily an agreement to settle a case pending before it," *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted), as requested here, the court must first determine whether General Yeager expressly authorized Mr. White to bind the General to the otherwise valid settlement agreement.  Because General Yeager had declared, when his competence was not in doubt, that Mr. White settled claims without his express authority, the question proceeded to an evidentiary hearing.  Prior Order at 8.  Given that General Yeager attacks the settlement, it is his burden to disprove that Mr. White had the requisite authority.  *Id.* (citing cases).  The court applies this burden faithfully, while bearing in mind General Yeager's compromised state at the time of the evidentiary hearing.

State law governs whether Mr. White had the requisite authority to bind General Yeager to the settlement agreement with Parsons Behle.  *See id.* at 7 (deciding state law governs this question). Under California law it is "'well settled that an attorney must be specifically authorized to settle and compromise a claim" and that "merely on the basis of his employment [an attorney] has no implied or ostensible authority to bind his client to a compromise settlement of pending litigation . . . .'"  *Levy v. Superior Court*, 10 Cal. 4th 578, 583 (1995) (quoting *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 404 (1985)).  As the California Supreme Court has explained, "[u]nlike the steps an attorney may take on behalf of the client that are incidental to the management of a lawsuit, . . .  the settlement of a lawsuit is not incidental to the management of

5

the lawsuit; it ends the lawsuit" and because settlement is "such a serious step" state law mandates the client's knowledge and express consent. *Id.* at 583 (citations omitted)

C. Discussion

The court does not doubt Mr. White's honest belief he was settling the parties' dispute with General Yeager's express authority. Based on the totality of the record before the court and the applicable law, however, the court cannot conclude Mr. White was actually granted that authority. As explained below, the court bases this finding on the emails presented at hearing, the testimony from Mr. White, his paralegal and Mrs. Yeager, the parties' briefing and concerns noted by Mr. Houpt as General Yeager's guardian ad litem.

1. Mr. White's Testimony

Mr. White's testimony itself indicates he lacked the requisite express authority to settle. Initially, the court notes Mr. White testified subject to the Yeagers' waiver of their attorney-client privilege "for the limited purposes" of allowing the court to decide whether he had "authority to enter into settlement," which the court explained "necessarily involves some exploration of the context." Tr. 38:8-25; *see also* Prior Order at 8-9 (same).

When asked about his settlement authority, Mr. White explained, "I believe I had authority to enter into this agreement based upon my conversations with the Yeagers . . . ." Tr. 47:25-48:1. He did not say that at some point he obtained approval of settlement from General Yeager alone. He stated generally, "I thought we were all on the same page," noting that when he agreed to represent the Yeagers for free, they had agreed to a "caveat" giving him general authority to "eliminate" litigation. Tr. 48:13-20, 49:24-25. Mr. White interpreted the Yeagers' acceptance of his legal assistance as implicit settlement authority. Tr. 47:24-49:25. He did not say he received any express authority from either General or Mrs. Yeager.

Mr. White also could not say with any certainty when he, or anyone in his office, first notified the Yeagers about Parsons Behle's settlement offer. The email chain between counsel detailing the agreement days before trial does not show the Yeagers were copied on any of the messages, nor is there any document showing Mr. White forwarded the emails to the Yeagers. Tr. 45:11-17, 46:19-47:25, 51:10-25 (referencing emails); *cf. Expedite It AOG, LLC v.*

*Clay Smith Eng'g, Inc.*, No. SA-CV-101055-AGM-LGX, 2011 WL 13225044, at *3 (C.D. Cal. July 25, 2011) (noting evidence of client's being "copied on emails" discussing the settlement paired with evidence that client never "rejected those statements by its counsel" is the "most important[]" evidence in assessing an attorney's authority to settle). Mr. White said it was his "general" and "preferred" practice to communicate with the Yeagers "by phone or a meeting," or "by letter," Tr. 34:20-23, 39:17-21, but when asked how he notified the Yeagers that the trial date was vacated, Mr. White's paralegal testified, "most likely by e-mail," Tr. 27:22-28:1. When she examined Mr. White, Mrs. Yeager introduced two emails she exchanged with Mr. White, *see* Tr. 65:10-71:2 & Exs. A-B,[1] one of which Mr. White sent on September 5, 2014, the day he signed the settlement agreement and agreed with Parsons Behle to vacate the trial. Mr. White admitted he did not mention the settlement in this September 5 email. Tr. 66:20-67:20 & Ex. A.

Mr. White did not identify a single meeting, phone call or letter with the Yeagers specifically discussing the settlement offer before he agreed to it. Instead, he expressly identified only post-agreement discussions. When Mr. White was asked to "recall a discussion with the Yeagers" as to whether they were bound by the settlement agreement he negotiated, he described conversations in which he told them, "this is the agreement that we had pounded out, and I expected them to agree to it." Tr. 60:15-20. Mr. White agreed no conversations with the Yeagers defining the extent of any settlement authority were memorialized in writing. Tr. 34:1-3, 62:25-63:1. In sum, no evidence before the court shows either General or Mrs. Yeager authorized Mr. White to sign the settlement agreement with Parsons Behle.

When asked if the Yeagers were "told why the trial was off," Mr. White responded, "I don't know. I did not make that communication." Tr. 55:2-4. When asked if he had any "understanding, at any point in time, that the Yeagers had been told that the trial was off by reason of a settlement," he again said, "I don't know that. . . . I did not communicate that

---

[1] Opposing counsel objected to Mrs. Yeager's exhibits. Tr. 68-71. The court admitted Exhibits A and B, which are lodged with the court, but declined to admit Exhibit C, finding it to be incomplete. *See* Tr. 69:11-12, 70:1-2, 70:24-71:2. The court here need not resolve other issues related to Mrs. Yeager's proposed exhibits, raised by Parsons Behle at hearing.

7

directly to them." Tr. 55:5-10.  When Mr. White's paralegal was asked if the Yeagers were told the trial was vacated because the case settled, she too responded, "I don't recall."  Tr. 28:2-8; *see also* Tr. 19:20-23 (admitting she had no recollection of "having discussed the subject of settlement with either General Yeager or Mrs. Yeager at any point").  When asked why she told opposing counsel the settlement was agreed to by the "parties," Mr. White's paralegal explained she did not recall exactly, but that Mr. White had said something to the effect of, "go ahead and respond with that," even though she had not personally spoken to the Yeagers.  Tr. 18:6-24.

### 2. Mrs. Yeager's Testimony

Mrs. Yeager's testimony, even given minimal weight given that she was neither a party to this case nor authorized to speak on General Yeager's behalf at the relevant time, provides additional support for the conclusion that General Yeager never authorized the settlement.  Mrs. Yeager testified that Mr. White "never discussed a settlement with General Yeager or me until [] September 25th," weeks after he had signed the agreement and requested that the trial date be vacated.  Tr. 90:18-20.  She also testified that as soon as Mr. White relayed Parsons Behle's offer, the Yeagers promptly said, "no, thank you."  Tr. 89:1-3.

Mrs. Yeager unequivocally disclaimed that she or General Yeager ever gave Mr. White settlement authority.  Tr. 103:23-104:3 ("I can't remember exactly what I've said before, but I just wanted to make it clear that neither General Yeager nor -- . . . I've never heard General Yeager authorize Mr. White to settle . . . , and I have never authorized Mr. White to settle the case.").  The court sustained an outside-the-scope objection when Mrs. Yeager offered this testimony because she had already rested her case, and the court took under submission Parsons Behle's motion to strike.  Tr. 104:4-7.  The court notes Mrs. Yeager's statement was consistent with her earlier testimony, *see e.g.*, Tr. 90:18-20 ("Parker White never discussed a settlement with General Yeager or me until that September 25th telephone call").  Given that Mrs. Yeager remained under oath when she made this final statement, the court elects to consider it here and therefore DENIES Parsons Behle's motion to strike it.

/////

/////

### 3. Parsons Behle's Arguments

Parsons Behle argues that because the Yeagers were admittedly unprepared for trial, and considering they knew the trial had been vacated yet did nothing afterwards to signal their disapproval, they must have known the case had settled. *See* Parsons Behle Br. at 3-4.

The court is unpersuaded. Although Mrs. Yeager admitted that the week before trial the Yeagers were out of town and unprepared, Mrs. Yeager implied a reason for the lack of preparation when she indicated through a question to Mr. White that the Yeagers first learned about the trial only ten days before it was scheduled to begin, Tr. 65:3-5, and later testified they had requested a continuance. Tr. 96:6-99:12. Mr. White confirmed the Yeagers had in fact requested a continuance. Tr. 39:24-25:11. On this record, the Yeagers' awareness that the trial had been vacated and their lack of trial preparation does not show they knew about and authorized a settlement agreement.

### 4. Concerns Expressed by Guardian Ad Litem

Mr. Houpt's detailed observations in his capacity as General Yeager's guardian ad litem bolster the conclusion that General Yeager did not authorize the settlement agreement. Mr. Houpt informed the court that he "remain[s] unconvinced that the Yeagers gave their authority for Mr. White to enter into the purported settlement agreement on General Yeager's behalf" and that "the record contradicts" any such authorization. Houpt Letter at 2. He notes with particular concern the "absence of any writing or e-mail to show [the Yeagers] received any advance notice of the proposed settlement or any confirmation they agreed to it . . . ." *Id.*

Mr. Houpt further explains that even if General Yeager had authorized a settlement, this particular agreement is legally unenforceable because it contained a material term of which the Yeagers were never apprised. *Id.* at 2-4; *see also Levy*, 10 Cal. 4th at 584 (explaining because settlement is "such a serious step" state law mandates the client's knowledge of and express consent to material terms). This material term was a "general release of all claims," which as relevant here, would have waived a malpractice action the Yeagers anticipated bringing against Parsons Behle in state court. Houpt Letter at 2. Mr. Houpt suggests the record shows that at best Mr. White never discussed this term with the Yeagers, but at worst, Mr. White

9

misled the Yeagers into believing their malpractice action would remain unaffected by the settlement. *See id.* at 2-4. Mr. White minimized the significance of this general waiver on the stand, testifying he felt the Yeagers "were giving up nothing" because the Yeager's anticipated malpractice claim, according to him, was time barred such that this additional term "didn't matter." *See* Tr. 41:7-11, 49:8-25. But as Mr. Houpt points out, even if the malpractice claim was time barred, which is unclear, *cf.* Cal. Civ. Proc. Code § 340.6(a)(2) (tolling applies while attorney is still representing clients on same matter), Mr. White should have discussed with the Yeagers the possibility that this "time-barred malpractice claim might still be an affirmative defense or cross-claim and an offset to an attorney-fee claim." Houpt Letter at 4 (citing cases). As guardian ad litem, Mr. Houpt concludes, based on his conversations with Parsons Behle attorneys before preparing this letter, he cannot state the purported settlement is in General Yeager's best interests. *Id.* at 5-6.

Given General Yeager's inability to testify effectively on his own behalf at the hearing, the court gives weight to Mr. Houpt's observations, each of which support the court's conclusion that the settlement agreement is unenforceable.

### 5. Conclusion

In sum, the court cannot conclude General Yeager, or Mrs. Yeager on his behalf, ever knew about and expressly consented to be bound by the settlement agreement. Mr. White's honest belief that a "caveat" of his representation with General Yeager was his implicit authority to "eliminate litigation" is not enough to render the agreement enforceable under California law. *See* Tr. 48:15-20, 49:24-25; *Levy*, 10 Cal. 4th at 583 ("The law is well settled that an attorney must be specifically authorized to settle and compromise a claim, [and] that merely on the basis of his employment he has no implied or ostensible authority to bind his client to a compromise settlement of pending litigation.") (alterations, citations and quotations omitted).

The court DENIES Parsons Behle's motion to enforce the agreement.

## II. REQUEST TO DISBURSE REMAINING FUNDS

Mrs. Yeager has filed an *ex parte* request for "an immediate partial distribution" of the remaining interpleaded funds, or alternatively for leave to "conduct discovery and [file] a

motion for summary or partial summary judgment re distribution. Request at 1-2. Parsons Behle opposes. ECF No. 367. Connie Bowlin, the Estate of Ed Bowlin, Aviation Autographs, and Bowlin & Associates, Inc. (collectively, "the Bowlins") also oppose. ECF No. 368.

Specifically, Mrs. Yeager claims entitlement to "$226,404.93 (plus interest)." Request at 6. Her request is both premature and procedurally improper. In December 2017, when Mrs. Yeager filed her request, two motions were pending: Parsons Behle's motion to enforce, which this order resolves, and the Bowlins' motion for fees and costs, which the court resolved on March 30, 2018, *see* ECF No. 376. Because the court had yet to ascertain if Parsons Behle or the Bowlins were entitled to a portion of the interpleaded funds, several factual disputes remained. Furthermore, the deadline for dispositive motions lapsed years ago, rendering this dispositive request procedurally improper as well. *See* Scheduling Order, ECF No. 71 (setting April 25, 2014 dispositive motion deadline).

### III. SCHEDULING NEW TRIAL DATE

The court will proceed to trial on the fee dispute that persists between Parsons Behle and Mrs. Yeager. Although multiple parties initially claimed entitlement to a portion of the interpleaded funds, *see* ECF No. 1, ¶¶ 14-18, all but Parsons Behle have since withdrawn their claims. *See* ECF No. 368, 376 (Bowlins acknowledging no remaining "direct claim to the interpleaded funds" and court's order adjudicating Bowlins' outstanding fee dispute); ECF No. 362 (Lesser Law Group's withdrawal of lien); ECF Nos. 192, 199 (voluntary dismissals of all claims by Law Offices of Joanna R. Mendoza, P.C., and De la Pena & McDonald, LLP). A trial date shall be determined at the pre-trial conference, which the court schedules below.

### IV. CONCLUSION

The court DENIES Parsons Behle's motion to enforce the settlement agreement, ECF No. 128, and DENIES Mrs. Yeager's ex parte request to disburse funds, ECF No. 364. Parsons Behle's complaint-in-intervention against the Yeagers embodies the sole outstanding dispute in this interpleader action. The matter shall now proceed to trial. The court SETS a final pre-trial conference for **10:00 a.m.** on **November 2, 2018**. A pre-trial statement from Mrs. Yeager and a separate statement from Parsons Behle are both due seven days prior.

IT IS SO ORDERED.

This resolves ECF Nos. 128, 364.

DATED: October 2, 2018.

_____
UNITED STATES DISTRICT JUDGE